[Cite as *Harper v. Chaney*, 2013-Ohio-1160.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| | | |
|---|---|---|
| LORI HARPER | | C.A. No.    26534 |
| Appellant | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| JOSEPH CHANEY, et al. | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellees | | CASE No.    CV 2011-06-2959 |

DECISION AND JOURNAL ENTRY

Dated: March 27, 2013

MOORE, Presiding Judge.

{¶1}    Plaintiff-Appellant, Lori Harper, appeals from the March 30, 2012, and June 6, 2012 judgment entries of the Summit County Court of Common Pleas.  We reverse.

I.

{¶2}    In 2009, Ms. Harper responded to an advertisement for a rental apartment owned by Defendant-Appellee, Joseph Chaney.  In the course of showing the apartment, Mr. Chaney took Ms. Harper to view the basement.  Mr. Chaney went down the basement stairs, followed by Ms. Harper.  At the bottom of the stairs, Ms. Harper fell on an extraneous step beyond the landing breaking several bones in her left leg, ankle and foot.

{¶3}    Ms. Harper filed a complaint against Mr. Chaney alleging (1) negligence, and (2) intentional, reckless and/or negligent infliction of emotional distress.  Mr. Chaney filed an answer and moved for summary judgment on the issue of negligence alone.

{¶4}     In his motion, Mr. Chaney argued that he had no duty to warn Ms. Harper of the step because it is an open and obvious danger.  Ms. Harper then filed a memorandum in opposition.  Ms. Harper contended that her deposition testimony, in contrast to Mr. Chaney's deposition testimony, created differing views regarding whether the landing step was open and obvious, and whether she acted reasonably in proceeding from the landing when she did not know about the existence of the step.  As such, Ms. Harper argued that genuine issues of material fact existed for the trier of fact, and Mr. Chaney's motion should be denied.  Mr. Chaney also filed a reply memorandum.

{¶5}     In granting Mr. Chaney's motion for summary judgment, the trial court determined that no genuine issues of material fact existed, and Ms. Harper was injured as a result of an open and obvious danger.  The trial court reasoned that:

> At first glance, it appears that there are material issues of fact.  Ms. Harper alleges that the steps down to the basement were dimly lit, and when she got to the landing it was dark.  Mr. Chaney alleges that the lights in the basement were turned on before Ms. Harper arrived at the building. * * * [T]he Court finds that the issue of whether the lights were on is not a material fact.  Material facts are "'facts that might affect the outcome of the suit under governing law.'"  Ms. Harper will be barred from recovery whether the lights were on or off because of the open-and-obvious doctrine.  If the lights were out, [Ms. Harper] will be barred from recovery because darkness is considered an open and obvious danger.  And if the lights were on, the step from the landing is [an] open and obvious danger.

(Internal citations omitted.)

{¶6}     Ms. Harper now appeals and raises one assignment of error for our consideration.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED IN GRANTING [MR. CHANEY'S] MOTION
FOR SUMMARY JUDGMENT [].

{¶7} In her sole assignment of error, Ms. Harper argues that the trial court erred by granting Mr. Chaney's motion for summary judgment. Specifically, she argues that genuine issues of material fact remain as to whether: (1) Mr. Chaney stated that he would "go down first and turn on some lights," (2) there were any lights on at the bottom of the stairs, (3) the basement window was partially blocked by a curtain, (4) Mr. Chaney was fully aware of the existence of the landing and the step, and Ms. Harper was not aware of either, and (5) the dangerous condition was open and obvious.

{¶8} This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Pursuant to Civ.R. 56(C), summary judgment is proper if:

> (1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-93 (1996). The moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). *Id.* at 292-293. Once this burden is satisfied, the non-moving party bears the burden of offering specific facts to show a genuine issue for trial. *Id.* at 293. The nonmoving party may not rest upon the mere allegations and denials in the pleadings but instead must point to, or provide, some evidentiary material that demonstrates a genuine dispute over a material fact. *In re Fike Trust*, 9th Dist. No. 06CA0018, 2006-Ohio-6332, ¶ 10.

{¶9} "In order to succeed under an action for negligence, a plaintiff must show the existence of a duty, a breach of that duty, and that the breach of that duty was the proximate cause of the plaintiff's injuries." *Galo v. Carron Asphalt Paving, Inc.*, 9th Dist. No. 08CA009374, 2008-Ohio-5001, ¶ 8, citing *Chambers v. St. Mary's School*, 82 Ohio St.3d 563, 565 (1998). "Generally, an owner owes a duty of ordinary care to a business invitee for hazardous conditions on the property." *Gardner v. Kinstlinger*, 9th Dist. No. 26374, 2012-Ohio-5486, ¶ 7. However, where a danger is open and obvious, the owner owes no such duty. *See Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, syllabus.

{¶10} If a danger is open and obvious, "the open and obvious nature of the hazard itself serves as a warning. Thus, the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves." *Zambo v. Tom-Car Foods*, 9th Dist. No. 09CA009619, 2010-Ohio-474, ¶ 7, quoting *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 644 (1992). Further, when considering whether a danger is open and obvious, a court must look to the totality of the circumstances and consider the hazard itself and any attendant circumstances that may have existed at the time of the injury. *Zambo* at ¶ 9. Additionally, "[o]pen and obvious dangers are not hidden, are not concealed from view, and are discoverable upon ordinary inspection." *Id.* at ¶ 8.

{¶11} However, where a danger is not open and obvious, an owner "owes a duty * * * to warn any invitees of latent or concealed defects of which the [owner] has or should have knowledge." *Campbell v. GMS Management Co., Inc.*, 9th Dist. No. 16403, 1994 WL 108886, *1 (Mar. 30, 1994). "[T]he mere occurrence of an injury to a business invitee does not give rise to a presumption or an inference of negligence." *Thomas v. Rebman Recreation, Inc.*, 9th Dist. No. 02CA008194, 2003-Ohio-2640, ¶ 8. Rather, the injured party must show that the owner had

actual or constructive knowledge of the condition. *See Alvarez v. Natl. City Bank*, 9th Dist. No. 24292, 2008-Ohio-444, ¶ 7; *Thomas* at ¶ 13.

**{¶12}** In support of his motion for summary judgment, and his contention that the step posed an open and obvious danger, Mr. Chaney pointed to Ms. Harper's deposition testimony, his own deposition testimony, and several photographs of the basement taken months after the accident occurred. In her deposition, Ms. Harper testified as follows:

* * *

Q. We were talking about your path through the rental property and you were telling me that you were at the top of the stairs.

A. Um-hum.

Q. And that my client was at the top of the stairs as well.

A. Um-hum.

Q. And you said you looked down and you were able to see light from a window.

A. Um-hum.

Q. Were you able to see the window from the top of the stairs?

A. I didn't look at the window. *I just know there was some light coming in as if from a window. It was daylight.*

Q. Were there—you said that [Mr. Chaney] had turned on a light at the top of the landing, correct?

A. Correct.

Q. And I am sorry, what did he say then, or what happened then?

A. He said "Let me go down first and turn on some lights."

Q. Okay. And then what happened?

A. Then he went down the steps and I was at the top of the steps and as I started to come down a couple of steps, he went off—I don't know where he went. He disappeared out of my sight and I think I heard a door open at that time.

So as I continued down the steps, got to the bottom of the steps, I was looking around to see where he went, and I turned to my right, and took a couple of steps to look behind the steps to see what was back there.  I was actually looking to see where the washer and dryer were.  And that is when I fell. That is where I fell.

* * *

Q.  Was it of any concern to you about going down into a basement with no lights?

A.  *There was daylight coming from the window.  It wasn't pitch black.  I could see that there were steps and I clearly went down the steps fine.*

Q.  Did [Mr. Chaney] ever tell you, "Okay.  The lights are on," anything to that effect?

A.  No.

Q.  Did you ever see him turn any lights on?

A.  No.

* * *

Q.  Did you believe that as you went down the steps, there was plenty of natural light or other light which made it capable [sic] for you to see clearly where you were going?

A.  Well, I guess it depends on what you meant by "plenty." *I could see enough to navigate the stairs.*

* * *

Q.  When you got to the bottom of the stairs, you stepped down the bottom, onto the concrete?

A.  Correct.

Q. And the window that you talked about, would that have been facing directly in front of you?

A.  Yes.

Q.  And then you said that you turned to the right?

A.  Yes.

Q. As you turned to the right, did you notice any lights being on at all?

A. No. It was dark and I turned like I previously said, to see if the washer and dryer or off in that direction, and that is the point when I fell.

* * *

Q. You chose to go down the steps before you were aware that [Mr. Chaney] had turned the light on; is that correct?

A. *I chose to go down the steps that I could see well enough to see*, and then I was standing holding onto the railing at the bottom of the landing, and like I said, turned, I was waiting for this light to come on. But in the meantime, I am just looking around to see what is under the steps.

Q. So you are waiting for the light to come on, the light never comes on?

A. No.

Q. And you choose to continue walking into an area that you can't see; is that a fair statement?

A. I really wasn't planning on walking, I was just going to look around that corner.

* * *

Q. Well, you did take some steps from the bottom of the steps, right?

A. I took like two steps, yes, if that. Maybe one.

Q. So you moved, you ambulated your body?

A. Yes, right.

Q. You moved from one place to another?

A. Um-hum.

Q. *And were you able to see in that area?*

A. *I was able to see from, again, the light from the window.*

Q. Were you able to see the floor?

A. *I wasn't looking at the floor, I was looking straight ahead to see if there was a washer and a dryer.*

Q. When the accident occurred, immediately before that, had you looked at the area of the floor where you would have been walking.

A. *No.*

Q. Why not?

A. *I have no reason to.*

* * *

Q. Now, as you were standing there at the bottom of the steps, if I understood correctly, you testified you never looked down at the floor?

A. No, I didn't look at the floor.

Q. As you turned and started walking, you never looked at the floor?

A. Correct.

Q. And also if I understood—well, let me ask you this: Had you looked at the floor, would the natural light that was in there have illuminated it to have shown the step where you fell?

A. No, because the step went down—if the step was an up step from where I was, it might have—light might have been reflecting on that. But because it was a down step, no, it wasn't illuminated.

* * *

Q. Okay. Had you, before you took the steps that you took, the couple of steps, had you looked down at the ground, do you believe you would have seen that step?

A. I can't say. *It could go either way.* But I am guessing—it could go either way. I have no idea, because—

Q. You are just not sure?

A. Not sure, yeah.

* * *

(Emphasis added.)

**{¶13}** It is well-settled that "[e]ven when an invitee does not actually see the object or danger until after he or she falls, no duty exists when the invitee could have seen the object or danger if he or she had looked." *McDonald v. Marbella Restaurant*, 8th Dist. No. 89810, 2008-

Ohio-3667, ¶ 28, citing *Haymond v. BP America*, 8th Dist. No. 86733, 2006-Ohio-2732, ¶ 16. As such, "[c]ourts must consider whether the object or danger itself *was observable*." (Emphasis added.) *McDonald* at ¶ 28.

{¶14} Here, Ms. Harper testified that, on the day of her accident, there was enough natural light coming from a window for her to safely navigate down the basement stairs. Further, Ms. Harper testified that when she reached the concrete platform at the bottom of the stairs and turned right, the lighting situation changed and the room became darker. However, Ms. Harper also indicated that, although the room was dark, it was not "pitch black." Finally, Ms. Harper admitted that when she turned to take a couple steps to her right, she never looked down at the floor. When asked if she thought she would have seen the step had she looked down at the floor, Ms. Harper stated, "I can't say. It could go either way. * * * I have no idea[.]" Mr. Chaney did not present *any* evidence with regard to whether the step was visible, in any type of lighting, had Ms. Harper been looking down at the floor on the day of her accident. As previously stated, although Mr. Chaney provided photographs of the basement stairs and step, he admitted that those photographs were not taken at the precise time of the accident, and as such, they do not depict the same conditions that existed on the day of the accident.

{¶15} Viewing the evidence in a light most favorable to Ms. Harper, the non-moving party, we conclude that the totality of the circumstances give rise to a question of fact regarding whether Ms. Harper would have been able to observe the step had she been looking down at the basement floor on the day of her accident. *See Zambo at* ¶ 9. Specifically, there was evidence of some daylight streaming in from a basement window, which may or may not have been partially obstructed by a curtain. Further, there was evidence of sufficient lighting to descend the basement stairs, but insufficient lighting in the area beyond the basement stairs where this

seemingly random step was located. While the trier of fact may ultimately find that, under these lighting conditions, Ms. Harper was reasonably expected to discover the step and avoid the hazard, we believe that such a factual determination must be resolved in Ms. Harper's favor at this stage of the proceedings. Accordingly, this Court concludes that a genuine issue of material fact exists as to whether, under the existing lighting conditions, the step posed an open and obvious danger. *See Marock v. Barberton Liedertafel*, 9th Dist. No. 23111, 2006-Ohio-5423, ¶ 19.

**{¶16}** Therefore, because Mr. Chaney did not meet his initial *Dresher* burden in establishing that no genuine issues of material fact existed, he is not entitled to judgment as a matter of law, and the trial court erred in granting his motion for summary judgment.

**{¶17}** Ms. Harper's assignment of error is sustained.

### III.

**{¶18}** In sustaining Ms. Harper's sole assignment of error, the judgment of the Summit County Court of Common Pleas is reversed and the cause remanded for further proceedings consistent with this decision.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

CARLA MOORE
FOR THE COURT

WHITMORE, J.
BELFANCE, J.
CONCUR.


APPEARANCES:

ROBERT C. MEEKER, Attorney at Law, for Appellant.

EDWARD A. DARK, Attorney at Law, for Appellee.