[Cite as *Baker v. Bob Evans Farms, Inc.*, 2014-Ohio-2850.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

CAROLYN D. BAKER, Executrix of the
Estate of Harold L. Conn, deceased

      Appellant

      v.

BOB EVANS FARMS, INC.

      Appellee

C.A. No.     13CA0023

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF WAYNE, OHIO
CASE No.    12-CV-0022

DECISION AND JOURNAL ENTRY

Dated: June 30, 2014

---

CARR, Judge.

{¶1} Plaintiff-Appellant, Carolyn Baker, executrix of The Estate of Harold Conn, appeals from the judgment of the Wayne County Court of Common Pleas, granting summary judgment in favor of Defendant-Appellee, Bob Evans Farms, Inc. This Court reverses and remands.

I.

{¶2} On the morning of December 20, 2009, Harold Conn went to the Bob Evans in Wooster for breakfast. Conn was 80 years old at the time and, for the last several years, had eaten breakfast most mornings at the same Bob Evans. On this particular morning, there was a dusting of snow outside, and the restaurant staff was having a difficult time keeping the foyer and vestibule area from being slippery. The vestibule area is a small area in between the two sets of doors that lead in and out of the restaurant. Both the foyer and vestibule area had tile floors,

but the staff at Bob Evans had placed rubber-backed carpet runners on the floor in both areas to provide a carpeted surface to the patrons entering and exiting.

{¶3} After he finished breakfast, Conn went to leave the restaurant. He either slipped or tripped nearest the first set of doors out of the restaurant, however, and seriously injured himself when he fell. No one witnessed the fall, but several members of the staff rushed over. Conn lay on the floor in the vestibule area until the paramedics arrived. Baker, Conn's daughter, arrived while the paramedics were still treating her father. According to Baker, she saw water on the floor all around the mat in the vestibule area and Conn told her that he fell when the mat slipped. According to staff members at Bob Evans, Conn told them that he tripped and fell because his cane got caught in the carpet runner. Conn died on January 11, 2010, as a result of the injuries he sustained when he fell.

{¶4} Subsequently, Baker filed a negligence suit against Bob Evans on behalf of her father's estate. Bob Evans answered the complaint and later filed a motion for summary judgment. Baker filed a brief in opposition to summary judgment, and Bob Evans filed a reply. The trial court ultimately awarded summary judgment to Bob Evans and dismissed Baker's complaint with prejudice.

{¶5} Baker now appeals from the trial court's judgment and raises one assignment of error for our review.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED AS A MATTER OF LAW BY GRANTING SUMMARY JUDGMENT WHERE THE FACTS RAISED A JURY QUESTION AS TO WHETHER THE ATTENDANT CIRCUMSTANCES EXCEPTION APPLIED TO NEGATE THE APPLICATION OF THE OPEN AND OBVIOUS DOCTRINE.

{¶6}    In her sole assignment of error, Baker argues that the trial court erred by granting Bob Evans' motion for summary judgment.  Specifically, she argues that genuine issues of material fact exist for trial with regard to whether her father was injured as the result of an open and obvious danger.  We agree.

{¶7}    This Court reviews an award of summary judgment de novo.  *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996).  This Court applies the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party.  *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12 (6th Dist.1983).

{¶8}    Pursuant to Civ.R. 56(C), summary judgment is proper if:

(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

{¶9}    The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact.  *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996).  Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C).  *Id.*  Once a moving party satisfies its burden of supporting its motion for summary judgment with sufficient and acceptable evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings.  Rather, the non-moving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine

triable issue" exists to be litigated at trial. *State ex rel. Zimmerman v. Tompkins*, 75 Ohio St.3d 447, 449 (1996).

{¶10} To prevail on a claim of negligence, a plaintiff "must establish the existence of a duty, a breach of that duty, and an injury proximately resulting from the breach of duty." *Mondi v. Stan Hywet Hall & Gardens, Inc.*, 9th Dist. Summit No. 25059, 2010-Ohio-2740, ¶ 11. "Generally, an owner owes a duty of ordinary care to a business invitee for hazardous conditions on the property." *Gardner v. Kinstlinger*, 9th Dist. Summit No. 26374, 2012-Ohio-5486, ¶ 7. The owner must protect the business invitee "by maintaining the premises in a safe condition." *Mondi* at ¶ 12, quoting *Light v. Ohio Univ.*, 28 Ohio St.3d 66, 68 (1986). Yet, an owner owes no such duty to a business invitee when the danger at issue is open and obvious. *Herbst v. Riverside Community Urban Redevelopment Corp.*, 9th Dist. Summit No. 26493, 2013-Ohio-916, ¶ 7, citing *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, syllabus. "The rationale behind the doctrine is that the open and obvious nature of the hazard itself serves as a warning. Thus, the owner * * * may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves." *Zambo v. Tom-Car Foods*, 9th Dist. Lorain No. 09CA009619, 2010-Ohio-474, ¶ 7, quoting *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 644 (1992). An open and obvious danger "acts as a complete bar to any negligence claims." *Armstrong* at ¶ 5. However, "where a danger is not open and obvious, an owner 'owes a duty * * * to warn any invitees of latent or concealed defects of which the [owner] has or should have knowledge.'" *Harper v. Chaney*, 9th Dist. Summit No. 26534, 2013-Ohio-1160, ¶ 11, quoting *Campbell v. GMS Mgt. Co., Inc.*, 9th Dist. Summit No. 16403, 1994 WL 108886, *1 (Mar. 30, 1994).

{¶11} "Open and obvious dangers are not hidden, are not concealed from view, and are discoverable upon ordinary inspection." *Zambo* at ¶ 8. "The determinative issue is whether the condition is observable." *Kirksey v. Summit Cty. Parking Deck*, 9th Dist. Summit No. 22755, 2005-Ohio-6742, ¶ 11. When considering whether a danger is observable, a court must look to the totality of the circumstances, considering "both the nature of the dangerous condition and any attendant circumstances that may have existed at the time of the injury." *Gehm v. Tri-County, Inc.*, 9th Dist. Lorain No. 09CA009693, 2010-Ohio-1080, ¶ 8. Attendant circumstances "include 'any distraction that would come to the attention of a [person] in the same circumstances and reduce the degree of care an ordinary person would exercise at the time.'" *Jenks v. Barberton*, 9th Dist. Summit No. 22300, 2005-Ohio-995, ¶ 16, quoting *France v. Parliament Park Townhomes*, 2d Dist. Montgomery No. 14264, 1994 WL 151658, *2 (Apr. 27, 1999). Thus, the question is whether, considering the totality of the circumstances, a reasonable person in Conn's situation would have discovered the hazard. *Jenks* at ¶ 15.

{¶12} Baker alleged in her complaint that her father, Harold Conn, "slipped and fell when the mat in the vestibule area of the entranceway [to Bob Evans] failed due to excess water accumulation, causing him serious injuries, including multiple fractures." She alleged that Bob Evans was liable for Conn's injuries because its agents failed to maintain the premises in a reasonably safe condition, failed to provide for adequate and safe floor covering in the entranceway, and failed to post any warnings about the condition of the floor.

{¶13} In her deposition testimony, Baker testified that Conn was 80 years old, but in good health on the morning that he went to Bob Evans for breakfast. Baker was at home when she received a call from the manager at Bob Evans, informing her that Conn had fallen. Baker drove to the restaurant and arrived after the paramedics were already on scene. Baker testified

that, when she arrived, she saw Conn lying in the vestibule area with his feet positioned nearest the restaurant's interior and his head positioned nearest the outside doorway. According to Baker, Conn was screaming due to the amount of pain he was in, but was also describing what had happened. Baker testified that Conn told her that he "felt it move and [he] knew [he] was going down." Baker attempted to console her father and did not ask him to elaborate on what had happened.

{¶14} Baker testified that she never went inside the vestibule area or the restaurant as the paramedics were treating Conn. She stated that people were holding all four of the restaurant's doors open so that the doors were not touching either Conn's head or his feet. As Baker stood outside looking into the vestibule area, the first thing she noticed was "how much water there was" on the floor. Baker testified that the paramedics were "standing in water" and that she "could see water at the mat and above [it]." She further testified that she looked for a sign and "saw no sign saying wet floors or anything like that."

{¶15} Baker testified that she spoke to her father later at the emergency room and that "he said that the mat slipped." Conn told Baker "he could feel the mat slipping" and tried to reach out to steady himself before he fell, but failed. Baker testified that, when Conn told her about the mat slipping, she thought "oh, okay, so that's what it was. There was water laying."

{¶16} Logan Mark, the assistant manager at Bob Evans at the time of Conn's fall, also testified by way of deposition. Mark testified that it was snowy outside on the day Conn fell and that he and the staff were having trouble with the restaurant floors being slippery. He stated that it was protocol at the restaurant to dry mop the floor at least once every 30 minutes. Mark believed he had instructed someone to dry mop around the vestibule area approximately five minutes before Conn's fall, but he could not remember who that person was or whether the

mopping had actually occurred. He stated, however, that he "absolutely remember[ed] there being a wet floor sign out there" and that he did not observe any standing water in the area where Conn fell. In an incident report he wrote on the day of the fall, Mark documented that Conn fell when he "tripped over the rug in the foyer." Mark specified that the restaurant's floor is all tile, but "there was a carpet runner supplied by a vendor that we would lay out for the purpose of making it a nonslip area." He testified that Conn told him the reason he had fallen was that he had tripped after getting his cane tangled up in the runner. He further testified that, after Conn's fall, he observed that the rubber-backed runner was flat.

{¶17} In her deposition, Amanda Myers testified that she was a waitress at Bob Evans on the day that Conn fell. Myers testified that she rushed to Conn after she heard someone say that he had fallen. Myers saw Conn lying in the vestibule area and knelt down by him. When asked if she remembered whether the tile floor around the runner was wet or dry, Myers stated that it could have been either. She did state, however, that she had her knees on the floor while she was bent down to help Conn and she "wasn't soaked." Myers testified that Conn was in a lot of pain, but that he told her "his cane got stuck on the rug." When Myers visited Conn in the hospital sometime after Christmas, he again told her "that his cane got stuck and he fell."

{¶18} Bob Evans moved for summary judgment on two separate bases. First, it argued that summary judgment was appropriate because the cause of Conn's fall was mere conjecture and speculation. Relying upon Baker's deposition, Bob Evans asserted that Baker only assumed the reason for Conn's fall was the wetness on the floor. Bob Evans noted that Conn allegedly told Baker only that the mat had slipped, not the reason why it had slipped. Baker had to infer that the reason for Conn's fall was that the mat had slipped on the water she saw on the floor. Moreover, Bob Evans noted that Conn had told several staff members he fell as a result of

tripping when his cane got caught in the rug. Because any number of things could have caused Conn's fall, Bob Evans argued that it was entitled to summary judgment.

{¶19} In her memorandum in opposition to summary judgment, Baker also relied upon her own deposition. Baker argued that Conn's statements to her and her observation of the water on the floor near where he fell raised at least a genuine issue of material fact regarding the cause of his fall. She also noted that, as the non-movant at the summary judgment stage, all of the evidence had to be construed in a light most favorable to her.

{¶20} "[T]he fact that a pedestrian cannot identify an unseen hazard as the cause of injury does not entitle the defendant to summary judgment." *Lovejoy v. EMH Regional Med. Ctr.*, 9th Dist. Lorain No. 07CA009145, 2008-Ohio-3205, ¶ 12. The record in this case is distinct from cases where we have upheld a summary judgment ruling on the basis that the cause of a plaintiff's injury was mere conjecture or speculation. *Compare Bozsik v. Aldi, Inc.*, 9th Dist. Summit No. 23146, 2006-Ohio-5880, ¶ 7-10 (mere conjecture that pallet left on the floor caused plaintiff's fall where no one witnessed the fall and plaintiff testified she "tripped over 'something'"); *Burth v. CPK Constr.*, 9th Dist. Summit No. 22713, 2006-Ohio-70, ¶ 15 (mere conjecture that defect in ladder caused plaintiff's fall where plaintiff did not know why or how he fell off the ladder). Baker testified in her deposition that Conn told her he fell when the mat slipped. Baker, therefore, set forth evidence that the cause of Conn's fall was the mat slipping. As to the reason why the mat slipped, Baker testified that she saw water on the floor. She specified that the paramedics were actually "standing in water" and that she "could see water at the mat and above [it]."

{¶21} Bob Evans essentially asked the trial court to reject any inferences that could be drawn in Baker's favor. That is not, however, the law that applies at the summary judgment

stage. At the summary judgment stage, all evidence must be construed and all reasonable inferences must be drawn in favor of the non-moving party. *Stewart v. Urig*, 176 Ohio App.3d 658, 2008-Ohio-3215, ¶ 10 (9th Dist.), quoting *Harry London Candies, Inc. v. Bernie J. Kosar Greeting Card Co.*, 9th Dist. Summit No. 20655, 2002 WL 185305, *3 (Feb. 6, 2002). Construing all the evidence and drawing all reasonable inferences in Baker's favor, she set forth evidence that the reason Conn fell was that water that had accumulated around and above the carpet runner on which he stepped caused the runner to slip out from underneath him. Although there was evidence to the contrary (i.e., Conn's statements that he tripped after his cane caught), Baker's deposition created a genuine issue of material fact with regard to the cause of Conn's fall. *Compare Smock v. Bob Evans Farms, Inc.*, 9th Dist. Lorain No. 02CA008075, 2003-Ohio-832, ¶ 11-13 (floor mat at restaurant open and obvious danger where only evidence was that patron tripped over it). Bob Evans, therefore, was not entitled to summary judgment on the basis that the cause of Conn's fall was mere conjecture and speculation.

{¶22} We note that Bob Evans argued in the court below that Baker could not rely on Conn's statements to create a genuine issue of material of fact because they were inadmissible hearsay. Bob Evans maintains the same position on appeal. In response, Baker asserted that Conn's statements fell under the hearsay exception contained in Evid.R. 804(B)(5). That rule permits the admission of a statement made by a decedent where the statement was made before death to a personal representative of the decedent's estate and was offered "to rebut testimony by an adverse party on a matter within the knowledge of the decedent." Evid.R. 804(B)(5). In moving for summary judgment, Bob Evans specifically relied on Conn's statements that he tripped on the runner after his cane got caught as evidence of the cause of Conn's fall. Baker, therefore, could introduce Conn's statements to her about the cause of his fall in order to rebut

that testimony. *See id.* We reject Bob Evans' argument that Conn's statements to Baker were inadmissible hearsay.

{¶23} The second basis on which Bob Evans sought summary judgment was the open and obvious doctrine. Bob Evans argued that it owed no duty to Conn because slick floors on a wintery day are to be expected and owners do not have a duty to protect patrons from water that might accumulate near an entranceway due to snow or rain. Baker countered that genuine issues of material fact existed as to whether "there was a great deal of water accumulation under the mat, which was not readily observable," and, therefore, not open and obvious.

{¶24} This Court has recognized on multiple occasions that a wet floor, by itself, can be an open and obvious danger. *See, e.g., Towns v. WEA Midway, LLC*, 9th Dist. Lorain No. 06CA009013, 2007-Ohio-5121, ¶ 4-14 (dampness on entryway floor where plaintiff slipped open and obvious as it had been raining outside and plaintiff presumptively knew the floor might be wet and slippery); *Andamasaris v. Annunciation Greek Orthodox Church*, 9th Dist. Summit No. 22191, 2005-Ohio-475, ¶ 15 ("The presence of wet floors is not such an unreasonably hazardous condition, but rather, it is a frequently encountered condition that a reasonable person would be expected to recognize and exercise caution to protect herself from harm."). The case currently before us, however, involves more than just a wet floor. "The fact that water is inherently slippery does not answer the question of whether [Conn] was injured as a result of an open and obvious danger." *Herbst*, 2013-Ohio-916, at ¶ 15.

{¶25} Baker testified that the first thing she noticed when she saw the paramedics treating her father was "how much water there was" on the floor. She specified that the paramedics were actually "standing in water" and that she "could see water at the mat and above [it]." She also testified that Conn told her he had fallen when the mat slipped. Mark, the former

assistant manager at Bob Evans, testified that Bob Evans places carpet runners near the entryway "for the purpose of making it a nonslip area." Taking the evidence as a whole, one could conclude that Conn slipped, despite stepping on the runner that was intended to create a nonslip surface, because enough water had accumulated around and above it.

{¶26} "[A] premises owner owes no duty to a person that enters upon the premises with respect to open and obvious dangers, when the conditions are so obvious that a person may be expected to discover them and protect himself or herself against the conditions." *Moody v. Coshocton Cty.*, 9th Dist. Wayne No. 05CA0059, 2006-Ohio-3751, ¶ 17. A duty to warn arises, however, when there is a hidden danger of which the owner has or should have knowledge. *Harper*, 2013-Ohio-1160, at ¶ 10-11; *Earnsberger v. Griffiths Park Swim Club*, 9th Dist. Summit No. 20882, 2002-Ohio-3739, ¶ 14. We cannot say that, as a matter of law, a carpet runner that fails due to an excess accumulation of water on or around it is so obvious a danger that a person would be expected to discover it. *See Moody* at ¶ 17. As a general principle, a carpet runner is intended to provide a nonslip surface. Mark, the former assistant manager, even testified to that effect. While wet floors are inherently slippery, one might not expect a carpet runner placed on top of a wet floor to be. Mark testified that the staff was having difficulty with the floors being slippery on the morning of Conn's fall and that he had ordered someone to dry mop the vestibule area. There was evidence, therefore, that Bob Evans either knew or should have known about the slippery conditions of the entryway and any water that might have accumulated around the carpet runner. Viewing the evidence in a light most favorable to Baker, genuine issues of material fact remain as to whether Conn was injured as a result of a latent or concealed defect of which Bob Evans had or should have had knowledge. *See Harper* at ¶ 10-11.

{¶27} Finally, Bob Evans argued that, even if it had a duty to warn Conn, Baker failed to present any competent evidence that it failed in its duty. Mark testified that he "absolutely remember[ed] there being a wet floor sign out" on the day of Conn's fall. Yet, Baker testified that she did not see any sign. While Baker never went inside the restaurant, she testified that all four of its doors were being held open while the paramedics were treating her father. Construing the evidence in Baker's favor, we cannot conclude that she would have been unable to see a warning sign, had Bob Evans placed one there. Because a genuine issue of material fact exists as to whether Bob Evans warned Conn of the slippery conditions in the entryway, summary judgment was inappropriate.

{¶28} Having reviewed the record, we must conclude that the trial court erred by awarding summary judgment to Bob Evans. Consequently, Baker's sole assignment of error is sustained.

III.

{¶29} Baker's sole assignment of error is sustained. The judgment of the Wayne County Court of Common Pleas is reversed, and the cause is remanded for further proceedings consistent with the foregoing opinion.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

DONNA J. CARR
FOR THE COURT

BELFANCE, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

DAVID C. KNOWLTON, Attorney at Law, for Appellant.

LESLIE A. GELHAR, Attorney at Law, for Appellee.

SEAN P. ALLAN, Attorney at Law, for Appellee.