[Cite as *Tyrrell v. Conrad Botzum Farmstead*, 2019-Ohio-1874.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

DANIELLE TYRRELL

    Appellee

    v.

THE CONRAD BOTZUM FARMSTEAD

    Appellant

C.A. No.    29063

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV-2016-06-2561

DECISION AND JOURNAL ENTRY

Dated: May 15, 2019

CARR, Judge.

{¶1} Defendant-Appellant The Conrad Botzum Farmstead ("Conrad Botzum") appeals the judgments of the Summit County Court of Common Pleas. This Court reverses and remands the matter for proceedings consistent with this opinion.

I.

{¶2} In 1998, George Winkelmann and his wife began leasing property from the National Park Service; that property is known as the Conrad Botzum Farmstead ("the property") and is located within the Cuyahoga Valley National Recreation Area. Public events and weddings are held at the property.

{¶3} On October 24, 2015, Plaintiff-Appellee Danielle Tyrrell[1] and her boyfriend attended a wedding reception at the property. Ms. Tyrrell wore high heels to the ceremony but

---

[1] Ms. Tyrrell's last name appears in the record as "Tyrrell" and "Tyrell." It is unclear which spelling is correct. For sake of consistency, this Court will use the spelling in the trial court's judgment entry: Tyrrell.

knew that the reception was being held at a barn and so changed into cowboy boots before going to the reception in order to be more comfortable. She and her boyfriend arrived at the property around 5:00 p.m. or 5:30 p.m. When they arrived, the weather was "gloomy" but it was not raining at the time. It was still daylight.

{¶4} At the time Ms. Tyrrell and her boyfriend arrived, probably about 100 people were there and most of them were on the deck. On the deck there was a bar on the left and appetizer tables set up in the middle under an awning. While Ms. Tyrrell went up on the deck, she did not stay there as it was crowded. Instead, she went down to the fire pit. Ms. Tyrrell had two alcoholic drinks prior to dinner. She denied having any other alcoholic beverages that night.

{¶5} Dinner was held in the barn, but the guests had to go out to the deck to get food from the buffet line. After dinner, the tables were removed from the deck and the deck was used for dancing. The deck was then lit by string lights. The deck itself was wood and was constructed in a parquet style with a checkerboard pattern. During the evening it rained on and off with "heavy downpours."

{¶6} By the time the dancing started it was dark and Ms. Tyrrell was not able to see the deck floor very well. Ten to fifteen minutes after Ms. Tyrrell began dancing, she "fell down[ and] broke [her] ankle." Her "foot must have hit something and [her] ankle folded in half[.]" Ms. Tyrrell fell near one of the posts on the deck. At the time she fell, it was not raining, but the deck boards were wet. After she fell, she looked around and noticed that the deck was "uneven."

{¶7} Ms. Tyrrell was transported to the emergency room and ultimately had to have surgery to repair her ankle. The triage notes from the emergency room reflect that Ms. Tyrrell was "severely intoxicated" when she arrived there.

{¶8} In June 2016, Ms. Tyrrell filed a complaint against Conrad Botzum and John Does 1-10. Ms. Tyrrell alleged that she tripped and fell due to improper maintenance and/or construction of the deck floor and that Conrad Botzum was negligent in maintaining the property. Subsequently, Conrad Botzum moved for summary judgment. After briefing, the motion was denied.

{¶9} The matter proceeded to a jury trial. Prior to the start of trial, the trial court concluded that neither Conrad Botzum's expert nor Ms. Tyrrell's expert could opine as to what caused Ms. Tyrrell's fall. At the close of Ms. Tyrrell's case, Conrad Botzum moved for a directed verdict and renewed its motion for summary judgment. After the close of all of the evidence, Conrad Botzum renewed its motions.

{¶10} The jury found in favor in Ms. Tyrrell. In so doing, it specifically concluded that Conrad Botzum was negligent and that its negligence was a direct and proximate cause of Ms. Tyrrell's injuries. The jury found Conrad Botzum 51% at fault and Ms. Tyrrell 49% at fault. The jury awarded a total of $57,345.50 in compensatory damages. On December 27, 2017, the trial court issued a judgment entry awarding Ms. Tyrrell $57,350.55 in damages. On January 19, 2018, the trial court issued a nunc pro tunc entry to correct the award amount to $29,248.78 based upon the jury's fault determination.

{¶11} Ms. Tyrrell filed a motion for prejudgment interest and costs and Conrad Botzum filed a motion for new trial, remittitur, and for judgment notwithstanding the verdict. A hearing was held on the motions, at which time the trial court indicated that it would deny the motion for prejudgment interest, but would "apportion costs against the defendant." In addition, the trial court denied Conrad Botzum's motions. Subsequently, the trial court issued a judgment entry

addressing those motions. However, the trial court's entry indicated that "Plaintiff's Motion for Prejudgment Interest and Costs is not well-taken and shall be DENIED." (Emphasis in original.)

{¶12} Thereafter, Conrad Botzum filed a notice of appeal and has raised three assignments of error for our review. Subsequently, Conrad Botzum brought it to this Court's attention that the trial court, sua sponte, several months later, on January 18, 2019, issued an entry stating that "[c]osts of this action are hereby assessed to Defendant." Conrad Botzum filed a motion with this Court to supplement the appeal with the trial court's entry and to strike it because the trial court lacked jurisdiction to enter the order. *See* Civ.R. 60(A). Ms. Tyrrell has conceded such an entry was issued.

{¶13} This Court declines to supplement the appeal with the entry, as, in light of this Court's disposition of the appeal, the issue is moot.

II.

### **ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED IN DENYING THE CONRAD BOTZUM FARMSTEAD'S MOTION FOR SUMMARY JUDGMENT, DIRECTED VERDICT AND JNOV.

{¶14} Conrad Botzum argues in its first assignment of error that the trial court erred in denying its motions for summary judgment, directed verdict, and motion for judgment notwithstanding the verdict. As we conclude that Conrad Botzum's argument concerning the motion for judgment notwithstanding the verdict is dispositive of this appeal, we will begin our discussion with it.

{¶15} Inter alia, Conrad Botzum argued below, and on appeal, that it was entitled to judgment notwithstanding the verdict because Ms. Tyrrell failed to demonstrate at trial that Conrad Botzum's negligence was the proximate cause of her fall and injuries. Because we agree

that the trial testimony does not provide sufficient evidence as to what caused Ms. Tyrrell's fall we agree.

{¶16} After a court enters judgment on a jury's verdict, a party may file a motion for judgment notwithstanding the verdict to have the judgment set aside on grounds other than weight of the evidence. *See* Civ.R. 50(B). "J[udgment notwithstanding the verdict] is proper if upon viewing the evidence in a light most favorable to the non-moving party and presuming any doubt to favor the non[-]moving party reasonable minds could come to but one conclusion, that being in favor of the moving party." *McMichael v. Akron Gen. Med. Ctr.*, 9th Dist. Summit No. 28333, 2017-Ohio-7594, ¶ 10, quoting *Williams v. Spitzer Auto World, Inc.*, 9th Dist. Lorain No. 07CA009098, 2008-Ohio-1467, ¶ 9. "If reasonable minds could reach different conclusions, the motion must be denied." *McMichael* at ¶ 10, quoting *Magnum Steel & Trading, L.L.C. v. Mink*, 9th Dist. Summit Nos. 26127, 26231, 2013-Ohio-2431, ¶ 12. "A de novo standard of review applies to a trial court's decision to grant or deny a motion for [judgment notwithstanding the verdict]." *McMichael* at ¶ 10.

{¶17} "To prevail on a claim of negligence, a plaintiff must establish the existence of a duty, a breach of that duty, and an injury proximately resulting from the breach of duty." (Internal quotations and citation omitted.) *Baker v. Bob Evans Farms, Inc.*, 9th Dist. Wayne No. 13CA0023, 2014-Ohio-2850, ¶ 10. In the context of summary judgment, this Court has concluded that "[t]he mere fact that damage occurred [is] not, in and of itself, proof of negligence." (Internal quotations and citation omitted.) *Williams v. Portage Country Club Co.*, 9th Dist. Summit No. 28445, 2017-Ohio-8986, ¶ 14. "[I]f the plaintiff's evidence on the issue of proximate cause is so meager and inconclusive that a finding of proximate cause would rest solely on speculation and conjecture, the defendant is entitled to judgment as a matter of law."

*Id.*, quoting *Thewlis v. Munyon*, 9th Dist. Medina No. 2262-M, 1994 WL 57787, *4 (Feb. 16, 1994).

{¶18} As noted above, neither expert was permitted to testify as to the cause of Ms. Tyrrell's fall. While there is much discussion in the trial testimony about the location of the fall, the characteristics of the deck boards, the lighting, the weather, and the number of people, there is little discussion about the cause of Ms. Tyrrell's fall.

{¶19} Ms. Tyrrell's own testimony does not provide evidence of what caused her fall. When asked about the fall, Ms. Tyrrell testified that, "[she] was dancing, like [she] always do[es,] and [her] foot must have hit something and [her] ankle folded in half[.]" She indicated that she fell backwards and fell near one of the poles. When asked whether she had noticed any of the boards before she fell, Ms. Tyrrell averred that she "wasn't really paying attention to the deck" but did notice that it "was parquet style." After she fell, Ms. Tyrrell indicated that she noticed that the deck was "uneven." She maintained that she found herself sitting on top of the uneven boards after she fell. Ms. Tyrrell was asked whether her cowboy boot caught on anything when she fell and she replied that she did not "know if it caught on anything. Maybe[.]" Yet, Ms. Tyrrell never identified what it was that she believed her foot hit or caught on that caused her to fall.

{¶20} Another wedding guest who did not know Ms. Tyrrell prior to the wedding also testified via video deposition at trial. The guest saw Ms. Tyrrell fall, however, he denied seeing her feet or knees as she fell. He testified that he "just saw her drop down." When asked if he knew what caused Ms. Tyrrell to fall, the guest stated that "[he] couldn't say for certain." The guest was then asked whether he observed anything around where Ms. Tyrrell fell that would cause him to be concerned. The guest replied that "the deck was uneven." The guest explained

that he meant there were "[d]ifferences in the elevation of the – it was kind of like a parquet deck." The guest was then asked if he believed that the different heights of the boards caused Ms. Tyrrell to fall. The guest nodded affirmatively and responded, "[m]ost likely."

{¶21} Finally, there was testimony from the bride that addressed causation. The bride also did not see Ms. Tyrrell's foot come down as she fell but did notice when she fell. She testified that she assumed that Ms. Tyrrell's chosen footwear caused her to fall. The bride stated that she noticed that Ms. Tyrrell had cowboy boots on and the bride knew that "cowboy boots with a wooden heel [are] slippery on any kind of surface[.]"

{¶22} Here, Ms. Tyrrell never identified at trial what she believed caused her fall. Further, we conclude that the wedding guest's testimony as to causation was based on speculation, as was the bride's. Neither the guest nor the bride saw Ms. Tyrrell's feet as she was falling and the guest did not even answer "yes" when asked if he believed that the different heights of the boards caused the fall; instead he responded, "[m]ost likely." While both the guest and the bride saw Ms. Tyrrell fall, neither of them saw what caused her to fall. Instead, their testimony offered theories as to what may have happened.

{¶23} Accordingly, even assuming that the trial record supported that Conrad Botzum breached a duty of care, there was insufficient evidence to establish that any breach caused Ms. Tyrrell's fall. *See Williams*, 2017-Ohio-8986, at ¶ 14. Therefore, the trial court erred in failing to grant Conrad Botzum's motion for judgment notwithstanding the verdict. In light of this conclusion, the Court declines to address Conrad Botzum's remaining arguments in this assignment of error as they have been rendered moot. Conrad Botzum's first assignment of error is sustained to the extent it argues that the trial court erred in denying its motion for judgment notwithstanding the verdict.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN DENYING THE CONRAD BOTZUM FARMSTEAD'S MOTION FOR NEW TRIAL.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED IN GIVING IMPROPER JURY INSTRUCTIONS, INTERROGATORIES, AND VERDICT FORMS.

**{¶24}** Conrad Botzum argues in its second assignment of error that the trial court erred in denying its motion for a new trial. It argues in its third assignment of error that the trial court erred in giving improper jury instructions, interrogatories, and verdict forms. In light of this Court's resolution of the first assignment of error, these assignments of error have been rendered moot and we decline to address them.

III.

**{¶25}** Conrad Botzum's first assignment of error is sustained to the extent that it argues that the trial court erred in failing to grant its motion for judgment notwithstanding the verdict. Conrad Botzum's remaining assignments of error are moot. The judgment of the Summit County Court of Common Pleas is reversed and the matter is remanded for proceedings consistent with this decision.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

DONNA J. CARR
FOR THE COURT

TEODOSIO, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

JAMES J. REAGAN, Attorney at Law, for Appellant.

BRIAN R. HERBERTH and JOYCE CHAMBERS REICHARD, Attorneys at Law, for Appellee.