[Cite as *Jacoboson v. MOM Corp.*, 2018-Ohio-3264.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

NICHOLAS JACOBSON

     Appellant

     v.

MOM CORP

     Appellee

C.A. No.     28782

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     CV-2016-06-2526

DECISION AND JOURNAL ENTRY

Dated: August 15, 2018

CARR, Judge.

{¶1}    Plaintiff-Appellant Nicholas Jacobson appeals from the judgment of the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2}    Pints was a bar in Akron operated by Defendant-Appellee MOM Corp. At the beginning of June 2014, Pints closed after the building owner refused to re-lease the building. The owners of Pints were not happy about the closing. On June 1, 2014, a farewell gathering was held at Pints, beginning at around 9:00 p.m. As the front door was locked, people were entering the bar through the back door. Around 11 p.m., Mr. Jacobson, who had worked at Pints for about a year and a half, arrived at Pints with his fiancée. According to Mr. Jacobson, the main lights were dimmed and the room was only lit by neon lights on the wall by the bar and an overhead light above the pool table. Approximately 15 to 20 people were in attendance, most of whom were just sitting around talking. The people in attendance were serving themselves drinks

and would go behind the bar to get them. Mr. Jacobson believed that he had served himself the first drink and that his fiancée got his second drink for him.

{¶3} Mr. Jacobson and his fiancée sat at the end of the bar, nearest to the front door. Mr. Jacobson sat facing the front door. After being there about 20 minutes, the manager of Pints began using the "[p]op gun" from behind to bar to spray water. Mr. Jacobson estimated that the spraying went on for 20 minutes. Mr. Jacobson thought that the owners and manager were upset about the lease and "so they were kind of trashing the establishment[.]" The manager was not spraying anyone in particular, and, instead was just spraying the floor. After using the "[p]op gun" on and off for about 5 minutes, the manager began using a hose with a sprayer to spray water on and off for about 10 minutes. Mr. Jacobson could not recall whether the pool table was sprayed and, as he was facing the door, he did not watch the entire episode. Neither Mr. Jacobson nor his fiancée were sprayed; however, Mr. Jacobson acknowledged that people did get wet. He did not know if it was because they were hit directly or if it was because the water was hitting the floor and they got wet from that.

{¶4} Around 11:45 p.m., Mr. Jacobson's fiancée went out the back door to smoke. After Mr. Jacobson finished a conversation he was having, he proceeded along the length of the bar towards the back door to join her. When he reached the other end of the bar, he slipped and fell, causing injury.

{¶5} In June 2016, Mr. Jacobson filed a complaint sounding in negligence against MOM Corp. and several John Doe individuals and entities. MOM Corp. filed a motion for summary judgment based upon the open and obvious doctrine. MOM Corp. argued that Mr. Jacobson was aware that water was being sprayed and that he could have seen it if he had looked. In support of its motion, MOM Corp. submitted Mr. Jacobson's deposition and the

accompanying exhibits. Those exhibits included a photograph of Pints, believed to have been taken after Mr. Jacobson had left the bar on the night he fell, and a diagram of the bar created by Mr. Jacobson. Mr. Jacobson filed a brief in opposition to the motion and submitted an affidavit in support of his position. Ultimately, the trial court granted MOM Corp.'s motion.

{¶6} Mr. Jacobson filed a motion for relief from judgment pursuant to Civ.R. 60(B) and thereafter filed a notice of appeal. Mr. Jacobson then requested that this Court stay the proceedings and remand the matter so that the trial court could rule on his motion, which this Court granted. Upon remand, the trial court denied Mr. Jacobson's motion.

{¶7} Mr. Jacobson's appeal is again before this Court. He has raised a single assignment of error for our review.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT COMMITTED LEGAL ERROR IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT, PURSUANT TO RULE 56(C) OF THE OHIO RULES OF CIVIL PROCEDURE, IN THAT THERE EXISTS GENUINE ISSUES OF FACT, WHETHER THE DANGEROUS CONDITION OF THE FLOOR WHERE APPELLANT SLIPPED AND FELL WAS OPEN AND OBVIOUS UNDER THE TOTALITY OF THE CIRCUMSTANCES.

{¶8} Mr. Jacobson argues in his sole assignment of error that the trial court erred in granting summary judgment to MOM Corp. as genuine issues of material fact remained with respect to whether the hazard was open and obvious.

{¶9} This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). This Court applies the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and

resolving any doubt in favor of the non-moving party. *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12 (6th Dist.1983).

{¶10} Pursuant to Civ.R. 56(C), summary judgment is proper if:

(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

{¶11} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996). Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). *Id.* Once a moving party satisfies its burden of supporting its motion for summary judgment with acceptable evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings. *Id.* at 293. Rather, the non-moving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine triable issue" exists to be litigated at trial. *State ex rel. Zimmerman v. Tompkins*, 75 Ohio St.3d 447, 449 (1996).

{¶12} "To prevail on a claim of negligence, a plaintiff 'must establish the existence of a duty, a breach of that duty, and an injury proximately resulting from the breach of duty.'" *Baker v. Bob Evans Farms, Inc.*, 9th Dist. Wayne No. 13CA0023, 2014-Ohio-2850, ¶ 10, quoting *Mondi v. Stan Hywet Hall & Gardens, Inc.*, 9th Dist. Summit No. 25059, 2010-Ohio-2740, ¶ 11. "Generally, an owner owes a duty of ordinary care to a business invitee for hazardous conditions

on the property." (Internal quotations and citation omitted.) *Baker* at ¶ 10. Here, the trial court found that Mr. Jacobson was a business invitee and the parties have not challenged that finding. Accordingly, "[t]he owner must protect the business invitee by maintaining the premises in a safe condition." (Internal quotations and citations omitted.) *Id.* "Yet, an owner owes no such duty to a business invitee when the danger at issue is open and obvious." *Id.* Thus, "[a]n occupier of premises is under no duty to protect a business invitee against dangers which are known to such invitee or are so obvious and apparent to such invitee that he may reasonably be expected to discover them and protect himself against them." *Sidle v. Humphrey*, 13 Ohio St.2d 45 (1968), paragraph one of the syllabus. "[T]he presence of water on a business floor tends to be an open and obvious condition when the facts involve some expectation on the part of the invitee that water might be encountered." *Kraft v. Dolgencorp., Inc.*, 7th Dist. Mahoning No. 06 MA 69, 2007-Ohio-4997, ¶ 35; *see also Herbst v. Riverside Community Urban Redevelopment Corp.*, 9th Dist. Summit No. 26493, 2013-Ohio-916, ¶ 15 ("[W]ater is inherently slippery and can create dangerous conditions that would be obvious to a reasonable person."); *Towns v. WEA Midway, LLC,* 9th Dist. Lorain No. 06CA009013, 2007-Ohio-5121, ¶ 11-14 ("As in *Bennett* and *Kresge*, appellant knew it had been raining when she entered the mall and presumptively knew as a result of the rain that the floor might be wet and slippery. Therefore, this Court finds that appellee met its burden under *Dresher* to show the absence of a genuine issue of material fact as to whether the dampness on the floor where appellant slipped and fell was an open and obvious danger. Further, we find that appellants failed to meet their reciprocal burden under *Dresher* to prove that a genuine issue of material fact existed as to whether the dampness on the floor where Mrs. Towns fell was an open and obvious danger. Thus, appellee had no duty of care to warn

appellant that the floor might be slippery."); *Ritenauer v. Lorain Country Club,* 9th Dist. Lorain No. 01CA007811, 2001 Ohio App. LEXIS 4016, *4-7 (Sept. 12, 2001).

{¶13} After viewing the evidence in a light most favorable to Mr. Jacobson, we can only conclude that, given the peculiar facts before us, Mr. Jacobson should have expected to encounter water on his path to the back door, such that the dangerous condition was one that MOM Corp. did not have a duty to warn him. *See Kraft* at ¶ 35.

{¶14} In support of MOM Corp.'s motion for summary judgment, it submitted Mr. Jacobson's deposition, which included exhibits. Among those exhibits were a diagram of Pints and a photograph believed to have been taken after Mr. Jacobson left Pints. The diagram of the layout of Pints that Mr. Jacobson drew at his deposition is helpful in evaluating the facts. In the drawing, the front door is located near the bottom right of the image. Above the front door, and also on the right side of the image, is a long rectangle labeled as the bar, which extends more than half the length of the drawing. Above the bar in the drawing is another door and to the right and above that door is a door labeled "Back Door." Towards the middle of the drawing is a box labeled pool table and above the pool table, and separated by a narrow open space, is long rectangle labeled as the kitchen. According to the diagram, the "pop gun" was located above the midway point of the bar and the hose appeared to be closer to the bottom portion of the bar. The left side of the diagram contains bathrooms along the wall and booths.

{¶15} During his deposition, Mr. Jacobson indicated on the diagram that he was sitting at the bottom portion of the bar and further indicated that he fell at the top corner of the bar. Accordingly, Mr. Jacobson's path to exit Pints, which he marked on the diagram, took him directly past the location of the hose and the "pop gun," as his path was between the bar and the pool table. Mr. Jacobson acknowledged that the manager was spraying the floor and that he was

doing so on and off for somewhere between 15 and 20 minutes. While Mr. Jacobson and his fiancée did not get wet, Mr. Jacobson stated that other people did get wet. When he was asked during his deposition whether it was correct that, before he fell, "[he] knew that [the manager] had been spraying that area of the floor with water for about 20 minutes," Mr. Jacobson responded, that he "was aware that it was going on."

{¶16} The photograph of Pints, that was presumed to have been taken that night after Mr. Jacobson left the bar, depicts the pool table near the center top of the image and bar stools along the right side of the image. Mr. Jacobson testified that he was seated near the bottom right area of the photograph. The area where Mr. Jacobson fell is not visible in the photograph; however, Mr. Jacobson acknowledged that the upper left quarter portion of the image contained what appeared to be a puddle. That portion of the image corresponds to the area below and to the left of the pool table in the diagram.

{¶17} Given all of the foregoing, we conclude that MOM Corp. met its initial burden to demonstrate the absence of a genuine issue of material fact. Mr. Jacobson was aware that water was being sprayed in the bar from behind the bar on and off for at least 15 minutes. Mr. Jacobson knew the floor was being sprayed and that people were getting wet as well, even if he and his fiancée were not getting wet. Additionally, Mr. Jacobson knew there were 15 to 20 people at Pints and that everyone had to get their own drinks from behind the bar. Finally, Mr. Jacobson's path to the exit led him directly past both the "pop gun" and hose. We can only conclude that a reasonable person would expect to encounter water on the floor along Mr. Jacobson's path to the exit. Even if somehow water was not directly sprayed into the precise path Mr. Jacobson took in walking towards the exit, it would be unreasonable for him not to

expect water to be in that area under the circumstances he found himself. *See, e.g., Towns,* 2007-Ohio-5121, at ¶ 11-14; *Kraft,* 2007-Ohio-4997, at ¶ 35.

{¶18} In opposition to the motion for summary judgment, Mr. Jacobson submitted his affidavit. Therein, Mr. Jacobson averred that the owners were present at the event when he arrived and they were standing close to the end of the bar near the kitchen. Mr. Jacobson stated that owners were aware of the water spraying and did nothing to stop it. According to Mr. Jacobson, the manager was spraying water "from behind the bar to other side of the bar, between the 'X' and the kitchen, near the pool table, as depicted in the attached diagram." The attached diagram is a copy of the diagram that was an exhibit at Mr. Jacobson's deposition. The "X" mentioned in the affidavit is located a little to the left of the path that Mr. Jacobson took on his route to the exit. Mr. Jacobson averred that he "had no reason to believe that there was anything on the floor, such as water, which would cause [him] to slip, since [the manager] was spraying between the 'X' and the kitchen, near the pool table[.]" Mr. Jacobson indicated that he did "not recall looking down where [he] slipped, [however,] even if [he] did look down, [he] would not have been able to detect the presence of water on the floor, since the water would have been clear, the room was dimly lit and the floor was made out of black and white tiles, which could impair detection of objects on the floor."

{¶19} We cannot say that Mr. Jacobson met his reciprocal burden to demonstrate the existence of a genuine issue of material fact. While Mr. Jacobson's affidavit appears to indicate that water was being directed to the left of his path to the exit, that water was coming from a "pop gun" and hose and was directed from behind the bar on and off for at least 15 minutes. Mr. Jacobson walked right through the path of where the water would pass to reach its target. Given all of the circumstances, including the instruments used to spray the water, the length of time it

was sprayed, the number of people in the establishment, the fact that people and the floor did get sprayed, and the fact that individuals were required to serve themselves drinks from the bar (thereby inevitably tracking the sprayed water around the establishment) we can only conclude that a reasonable person in Mr. Jacobson's situation would have expected water to be on the floor in the area where he fell and therefore would have discovered the hazard. *See, e.g., Kraft,* 2007-Ohio-4997, at ¶ 35; *see also Baker,* 2014-Ohio-2850, at ¶ 11 ("[T]he question is whether, considering the totality of the circumstances, a reasonable person in [Mr. Jacobson's] situation would have discovered the hazard."). In so concluding, we note that, while the pool table appears to be a fair distance from the bar in the diagram, from the photograph, it is clear that the pool table is much closer to the bar. Accordingly, we cannot say that the trial court erred in concluding the hazard was open and obvious.

**{¶20}** Mr. Jacobson's assignment of error is overruled.

III.

**{¶21}** Mr. Jacobson's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

TEODOSIO, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

ROBERT C. MEEKER, Attorney at Law, for Appellant.

CLIFFORD C. MASCH, Attorney at Law, for Appellee.

STEPHAN C. KREMER, Attorney at Law, for Appellee.