OPINION
{¶ 1} On October 13, 2004, Appellant, Roselea Kraft, filed suit against Appellees, Dolgencorp. Inc. dba Dollar General Corporation, A.P. Yajnik and Shobhana Yajnik, seeking compensation for personal injuries arising from Appellees' alleged negligence. Kraft slipped and fell in a puddle of water located in the Dollar General store on South Avenue in Youngstown, Ohio. A.P. Yajnik and Shobhana Yajnik own the building in which the Dollar General store is located.
 {¶ 2} Following discovery, Appellees filed separate motions for summary judgment alleging that the water that caused Appellant's fall constituted an open and obvious condition, and as such they owed no duty to protect Appellant. They argued in their summary judgment motions that the puddle of water on the floor was open and obvious based on Appellant's testimony that the pool of water in which she slipped spanned the width of the aisle; that the store was well lit; and she was in a hurry. They also relied on the store manager's testimony that he had placed a warning sign in the area in which she fell.
 {¶ 3} Appellant argued that the water was not an open and obvious condition and that Appellees owed her a duty of care and breached that duty when she slipped and fell on the water in their store. She pointed out that the water was clear and not easily seen. She also argued that the water was located in the middle of the store; it was not water in an entranceway that was tracked in from the weather outside. Thus, she had no expectation that there might be water on Appellees' floor.
 {¶ 4} The trial court agreed with Appellees and found that the water was an open and obvious condition to which Appellees owed Appellant no duty. The trial *Page 2 
court based its determination on the fact that Appellant described the puddle as spanning the width of the aisle and the fact that a Dollar General employee testified that a sign was posted warning of the wet floor. (April 18, 2006, Judgment Entry.)
 {¶ 5} Appellant timely appeals the trial court's decision, raising one assignment of error on appeal. She argues that genuine issues of material fact exist precluding summary judgment. For the following reasons, we agree with Appellant and hold that summary judgment was inappropriate in this case.
 {¶ 6} Appellant's sole assignment of error on appeal claims,
 {¶ 7} "THE TRIAL COURT ERRED, AS A MATTER OF LAW, IN GRANTING DEFENDANTS-APPELLEES' MOTION FOR SUMMARY JUDGMENT WHERE EVIDENCE EXISTS WHICH RAISES GENUINE ISSUES OF MATERIAL FACT NOT ONLY TO [sic] AS TO WHETHER DEFENDANT-APPELLEES [sic] HAD PROVIDED SUFFICIENT NOTICE TO APPELLANT OF THE EXISTENCE OF THE HAZARD BUT ALSO WHETHER THE CONDITION UPON WHICH PLAINTIFF FELL WAS OPEN AND OBVIOUS."
 {¶ 8} An appellate court reviews a trial court's decision on a motion for summary judgment de novo and follows the standards set forth in Civ.R. 56. Bonacorsi v. Wheeling Lake Erie Ry. Co., 95 Ohio St.3d 314,2002-Ohio-2220, 767 N.E.2d 707, at ¶ 24.
 {¶ 9} "[S]ummary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse *Page 3 
to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor." Zivich v. Mentor Soccer Club,Inc. (1998), 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201.
 {¶ 10} In Appellant's complaint she claimed that Appellees' negligence resulted in her fall and subsequent injuries. In order to prove actionable negligence, a plaintiff must show first that the defendant owed a duty of care; second, that the defendant breached its duty; and third, that the defendant's breach proximately caused the plaintiff's injury or harm. Texler v. D.O. Summers Cleaners Shirt Laundry Co.
(1998), 81 Ohio St.3d 677, 680, 693 N.E.2d 271.
 {¶ 11} Appellant was a business invitee at the time of her fall. "Invitees are persons who rightfully come upon the premises of another by invitation, express or implied, for some purpose which is beneficial to the owner." Gladon v. Greater Cleveland Regional Transit Auth.
(1996), 75 Ohio St.3d 312, 315, 662 N.E.2d 287. The owner of a business has a general duty to exercise ordinary care in maintaining his or her premises in a reasonably safe condition in order to ensure that invitees are not unnecessarily and unreasonably exposed to danger. Light v. OhioUniv. (1986), 28 Ohio St.3d 66, 68, 502 N.E.2d 611.
 {¶ 12} Business or premise owners have a duty to warn its customers of latent or hidden dangers. However, they have no duty to warn of open or obvious conditions. Armstrong v. Best Buy Co., Inc., 99 Ohio St.3d 79,2003-Ohio-2573, 788 N.E.2d 1088, at ¶ 5. *Page 4 
 {¶ 13} In Armstrong, the Ohio Supreme Court upheld the viability of the open and obvious doctrine and explained that it is the open and obvious nature of the hazard itself that acts as a warning to one who encounters it. Thus, a business or premise owner owes no duty of care regarding an open and obvious danger. Armstrong, supra.
 {¶ 14} The Supreme Court in Armstrong explained the manner in which this doctrine is to be applied, stating,
 {¶ 15} "* * * [W]e reiterate that when courts apply the rule, they must focus on the fact that the doctrine relates to the threshold issue of duty. By focusing on the duty prong of negligence, the rule properly considers the nature of the dangerous condition itself, as opposed to the nature of the plaintiff's conduct in encountering it. The fact that a plaintiff was unreasonable in choosing to encounter the danger is not what relieves the property owner of liability. Rather, it is the fact that the condition itself is so obvious that it absolves the property owner from taking any further action to protect the plaintiff." Id. at ¶ 13.
 {¶ 16} Thus, once a condition is found to be open and obvious, the inquiry into negligence on the part of the owner or operator of a business comes to an end.
 {¶ 17} In Armstrong, the plaintiff filed suit against Best Buy. On entering the store through an exit door, Armstrong struck a shopping-cart guardrail and suffered injuries as a result. He admitted in his deposition that he was familiar with the store and, "had he been looking down, he would have seen the guardrail." Id. at ¶ 16. In considering all the evidence, including photographs of the guardrail, the Supreme *Page 5 
Court concluded that the guardrail was, "visible to all persons entering and exiting the store." Id. As such, it was an open and obvious condition that eliminated the store's duty and precluded Armstrong's recovery.
 {¶ 18} In the case at hand, the only evidence before the trial court, and thus, the only evidence available for our review, is Appellant's deposition testimony and the deposition transcript of Keith Dlwgosh, the Dollar General store manager. A review of this evidence does not support the trial court's summary judgment decision.
 {¶ 19} Appellant's deposition reveals that she went to the Dollar General store that morning to purchase a broom. It was not raining. She arrived at the store at approximately 9:15 a.m., and the store was not busy. The store was well lit. She did not take a shopping cart or a basket, and was carrying only her purse. She walked in the store toward the left-hand side. While walking down the aisle toward the back of the store, she slipped and fell on water. She indicated that the water was located not very far from where she entered the aisle. Appellant did not see water on the floor before she fell. She never saw a "wet floor" sign; in fact, she was clear that there was no such sign in the area in which she fell. (Kraft Depo., pp. 12-16, 49, 51.)
 {¶ 20} Appellant did indicate at her deposition that she was, "in a rather [sic] hurry because I always walk pretty quickly, was going to get the broom and hurry up and go." (Kraft Depo., p. 16.) She then contradicted herself and said she was not in a hurry, but she explained that she just wanted to get her broom and go home and clean her garage. (Kraft Depo., p. 17.) She did not know there was water on the floor until she fell and found herself lying in water. She described the water as clear, *Page 6 
and said there was a large pool of water. The water spanned the width of the aisle. She was not asked about the depth of the puddle, and she never saw anything dripping from the ceiling. (Kraft Depo., pp. 20, 50-51.)
 {¶ 21} The store manager called the ambulance, and Appellant remained on the ground until the ambulance arrived. Ultimately, she discovered she had broken her hip and needed surgery. She was in a nursing home for ten days and still suffers from her injuries. (Kraft Depo., pp. 19-20, 26.)
 {¶ 22} Keith Dlwgosh's deposition testimony reveals that he was the Dollar General store manager on duty the morning of Appellant's fall. The store opens at 9:00 a.m. When he opened the store that morning he noticed two wet spots on the floor from a roof leak that occurred overnight. He was able to see the water on the floor with a reasonable inspection, but he also stated that he was aware that the roof had previously leaked in these same spots. Dlwgosh said he then placed a bright yellow "wet floor" sign at each of the wet spots. Due to the recurring leak, Dlwgosh stated that posting the signs had become somewhat of a daily task at this store. He was mopping one of the areas when he heard a customer call out. He found Appellant on the ground in the other wet area, and he called 911. Dlwgosh said she was laying on the floor about a foot from the wet floor sign. (Dlwgosh Depo., pp. 7-8, 15, 21, 26, 36-37.)
 {¶ 23} Contrary to Appellant's testimony, Dlwgosh testified that Appellant had a shopping cart at the time of her fall. He explained that it appeared as though she fell when turning the corner into the aisle with the water on the floor. He stated, *Page 7 
"[y]ou could tell that the way she had turned the corner with the buggy, she had just slid right out from underneath it." (Dlwgosh Depo., p. 12.)
 {¶ 24} When asked about the location of the wet floor sign, Dlwgosh stated that he placed it toward the front of the store at the end cap of the aisle in which Appellant fell. He explained that there were two entrances to this aisle, and the sign was at the end of the aisle. (Dlwgosh Depo., pp. 12-13.)
 {¶ 25} Dlwgosh was then asked to make a drawing of the area in which Appellant fell to better indicate where the warning sign was located. His drawing, Defendant's Exhibit A, shows that Appellant fell while turning into what he called the soda aisle. He placed an asterisk at the corner of the aisle at which she apparently turned to indicate the location of the sign. (Dlwgosh Depo., pp. 28-30, Def.'s Exh. A.)
 {¶ 26} Appellant cites Nienhaus v. Kroger Co. (June 14, 2001), 10th Dist. No. 00AP-1083, in support of her argument that the facts here do not lead to an application of the "open and obvious" doctrine. The plaintiff in Nienhaus slipped and fell on water left behind by the store's floor cleaning machine. The trial court found the puddle was open and obvious and granted summary judgment. It based its decision on the Ohio Supreme Court's decision in Paschal v. Rite Aid Pharmacy,Inc. (1985), 18 Ohio St.3d 203, 480 N.E.2d 474.
 {¶ 27} The court of appeals disagreed and distinguishedPaschal, noting that the plaintiff in that case slipped on water that was tracked into the store by other patrons from snow or rain outside. The Nienhaus Court concluded that in viewing the evidence in a light most favorable to the plaintiff, the water on the supermarket floor *Page 8 
was not open and obvious. It also stated, "[w]e also note the obvious, that water is transparent and may not be easily detected by unsuspecting shoppers. The duty is on the shopkeeper to make sure that its premises are safe." Id. at 2.
 {¶ 28} Nienhaus also discussed the plaintiffs claim that the supermarket failed to place sufficient warning signs indicating that the floor was wet. The evidence revealed that the store had two warning signs, but the plaintiff did not see either prior to her fall. The signs were evidently not located in the aisle in which she fell. The court of appeals found that there remained a genuine issue of fact as to whether, "two signs constitute adequate notice. It is for the trier of fact, based on the demeanor of the witnesses and the surrounding circumstances, whether to believe appellant's version of events or that of appellees." Id. at 3.
 {¶ 29} Appellant also directs our attention to Kidder v. KrogerCo., 2nd Dist. No. 20405, 2004-Ohio-4261, in support of her argument. Kidder slipped and fell on water in a grocery store after she turned into an aisle in which an employee was mopping. The store was well lit and there were few customers. Kidder saw water "all over the floor" after she fell, but there were no warning signs. She also saw a man mopping at the other end of the aisle after her fall. Id. at ¶ 3.
 {¶ 30} The trial court granted Kroger summary judgment as a matter of law, but the court of appeals reversed and remanded finding that reasonable minds may disagree about whether the wet floor was open and obvious. The Kidder Court stressed the fact that the plaintiff, "had little advance opportunity to perceive the hazard[, and * * *] the mopping employee was not in Kidder's line of vision until after *Page 9 
she had turned the corner and fallen." The court of appeals also noted that the water was clear, "making detection of its presence more difficult." Id. at ¶ 9.
 {¶ 31} Finally, the court discussed the fact that Kidder admitted that she "might" have seen the water had she been looking. The court concluded that this "admission" was inconclusive since her statement made it clear that she also just have easily "might not have" seen this water. Accordingly, the facts did not support an open and obvious determination. Id. at ¶ 11.
 {¶ 32} Conversely, Appellees, A.P. Yajnik and Shohana Yajnik, citeCaravella v. West-WHI Columbus Northwest Partners, 10th Dist. No. 05AP-499, 2005-Ohio-6762, for the proposition that, "the mere fact that water is transparent does not require the conclusion that genuine issues of material fact necessarily exist as to the obviousness of the hazard presented by the water." Id. at ¶ 22.
 {¶ 33} While this statement certainly may be true, a review of the facts in Caravella reveals that the plaintiff in that case slipped and fell on water in an entranceway at a hotel. There were no warning signs or protective mat. However, the plaintiff was well aware that it was raining outside, and he in fact went searching for this alternate door so he could exit the building closer to his vehicle in order to avoid the rain. Id. at ¶ 3. The plaintiff also admitted that the tile floor on which he slipped and fell was, "noticeably wet with standing water." Id. at ¶ 22. Accordingly, the court of appeals agreed that the wet floor inCaravella was an open and obvious condition. *Page 10 
 {¶ 34} Appellee, Dollar General Corp., raises Youngerman v. Meijer,Inc. (Sept. 20, 1996), 2nd Dist. No. 15732, for the proposition that in assessing whether a hazard is open and obvious, the key question is, "whether a customer exercising ordinary care under [the] circumstances would have seen and been able to guard him or herself against the condition." Id. at 9. However, the Youngerman decision was issued about seven years prior to the Ohio Supreme Court's decision inArmstrong, supra. As such, Youngerman fails to appreciate that the focus of the inquiry is on whether the condition is obvious, not on the individual's actions or reasonableness in encountering the particular condition. Armstrong, at ¶ 13.
 {¶ 35} Contrary to Appellees' arguments, the facts and the law before us support Appellant's argument on appeal. As Appellant points out, the presence of water on a business floor tends to be an open and obvious condition when the facts involve some expectation on the part of the invitee that water might be encountered. These cases usually arise involving business entrances during inclement weather. Under those facts, a patron is on notice of a dangerous condition. However, Appellant in this case fell on water in an aisle in the middle of the store that was apparently caused by a leaky roof. It was not raining the day of her fall, and she was not aware of the water before her fall.
 {¶ 36} Additionally, some of the plaintiffs in analogous cases admitted that they would have seen the water had they looked down. This was the case in Armstrong and Youngerman, supra. The fact that Appellant saw water after her fall does not carry great weight since she indicated that she was laying in it at the time. *Page 11 
She never said she would have seen the water before her fall had she looked down. Thus, there was no comparable admission in this case.
 {¶ 37} It should be noted that the trial court in this case found that the evidence established that there was a warning sign posted. However, the deposition evidence is in conflict on this issue. Appellant unequivocally said there was no warning sign. Further, whether there was a posted warning sign is not determinative in assessing an open and obvious condition since it is the nature of the condition that is presumed to warn the invitee of its danger.
 {¶ 38} Finally, it appears that Appellant slipped and fell when she turned into the aisle that had the water on the floor. As inKidder, Appellant may have had little opportunity to perceive the hazard since she came upon the water after turning the corner. Even if there was no conflicting evidence as to the existence of a warning sign, Dlwgosh's testimony is unclear as to whether the sign was in her line of vision prior to her fall.
 {¶ 39} In viewing the evidence in a light most favorable to Appellant, we cannot hold that this was an open and obvious hazard relieving Appellees from any duty. Material issues of fact exist in this matter. As such, summary judgment was inappropriate. We sustain Appellant's sole assignment of error and reverse and remand this case to the trial court.
 Donofrio, J., Vukovich, J., concurs. *Page 1