[Cite as *George v. Miami Univ.*, 2024-Ohio-5281.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Nancy George, | : | |
| Plaintiff-Appellee, | : | No. 23AP-339<br>(Ct. of Cl. No. 2021-00187JD) |
| v. | : | (REGULAR CALENDAR) |
| Miami University, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on November 5, 2024

**On brief:** *O'Connor, Acciani & Levy, Dennis C. Mahoney, and Joshua R. Kemme,* for appellee.
**Argued:** *Dennis C. Mahoney* and *Joshua R. Kemme.*

**On brief:** Dave Yost, *Attorney General, Peter E. DeMarco,* and *Lauren D. Emery,* for appellant.
**Argued:** *Peter E. DeMarco.*

APPEAL from the Court of Claims of Ohio

MENTEL, P.J.

{¶ 1} Defendant-appellant, Miami University, appeals from a judgment in favor of plaintiff-appellee, Nancy George, for negligence, with damages of $35,025 against Miami University. For the reasons that follow, we affirm in part and reverse in part.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On April 7, 2021, Ms. George filed a complaint asserting a negligence claim against Miami University for injuries she sustained after she fell onto the ice at the Goggin Ice Center ("Center") and was struck by a Zamboni. Pursuant to Civ.R. 53, the matter was referred to a magistrate for trial at which the following evidence was adduced.

{¶ 3} On March 11, 2018, Ms. George attended her son's ice hockey game at the Center. (July 25, 2022 Tr. at 62). According to Ms. George, she has watched her son play

hockey at the Center on most Sundays for the last three to four years. (Tr. at 63.) Ms. George would generally sit in the same area of the stands, about halfway up the first level of seating, when she visited the Center. (Tr. at 64-65.) The stairs to ingress and egress the stands are situated along the glass next to one of the doors that leads onto the ice rink. (Tr. at 66.) Ms. George testified that the staircase at issue included an abnormally long final step, which measured at approximately 18 inches. (Tr. at 43, 67, 121.) Ms. George acknowledged the area is well-lit, and she has walked the final step many times. (Tr. at 43, 67.) On this occasion, the door to the ice rink was left open. (Tr. at 43.) Ms. George testified that this was not unusual as the door to the ice rink was left open "[a]ll the time." (Tr. at 43.)

{¶ 4} At the conclusion of the hockey game, Ms. George began exiting the stands and proceeded towards the lobby. (Tr. at 66.) Ms. George walked along the front row of the stands along the glass and descended the stairs. (Tr. at 66.) At that time, Ms. George saw players leaving the ice and going down the hallway towards the lobby. (Tr. at 69-70.) Ms. George also observed that there were a couple of players on the ice to help move the nets out of the way of the Zamboni. (Tr. at 60.) According to Ms. George, she slipped as she descended the stairs. (Tr. at 67.) Ms. George then fell through the open door and was struck by the Zamboni that was resurfacing the ice at that time. (Tr. at 44, 69.)

{¶ 5} While Ms. George posited that she could have slipped on water or ice left by one of the hockey players, she did not remember seeing water in the area at any point. (Tr. at 67-68.) Ms. George acknowledged that she could have fallen because she lost her balance or one of her legs buckled. (Tr. at 68.) Ms. George also conceded that when she was descending the stairs, she was aware the Zamboni was on the ice. (Tr. at 70.) Ms. George did not recall if she saw that the door was open on the day of the incident, but she acknowledged that on "several" occasions she has "notice[d] the door was open because the [Zamboni] machine makes such a large noise and it's right there next to the door when you're going out, so it's hard not to notice it." (Tr. at 70-71.) "When I would walk by, I would think, oh, that's really close to someone walking by this door and that being open. It was alarming." (Tr. at 70.)

{¶ 6} According to Johnathan Elliott, the Associate Director of Operations, a sign labeled with yellow and black caution tape that read, "WATCH YOUR STEP," has been posted by the large stair since around the time "the building was constructed." (Tr. at 96-97, 101, 125.) When asked if Ms. George could have taken a different route, Elliott replied,

"Yes. She could have gone up the stairs and that would be the main concourse on the second level of the facility. And she would have gone up the stairs and then taken a right and then gone out to the main concourse and down the stairs into the lobby from there." (Tr. at 115.) Elliott is not aware of anyone else falling in front of a Zamboni. (Tr. at 129.) While there is no formal policy, "it's kind of a generally accepted within ice rinks that when you exit, you close the door." (Tr. at 131.)

{¶ 7} Kevin Ackley is the Senior Director at the Center. (Tr. at 134.) Ackley inspected the area where the accident took place "to see if there were any problems that could have precipitated [the] fall" and concluded that there was nothing "out of the ordinary, * * * no wet areas, nothing of that nature." (Tr. at 137.) Ackley testified that if Ms. George did not want to go down the steps, "[t]here's multiple different exits to leave if - - if patrons choose to." (Tr. at 142.) Steven Mahlerwein provided testimony regarding the operation of the Zamboni. (Tr. at 158-59.) According to Mahlerwein, he had never hit anyone on the ice prior to the incident with Ms. George. (Tr. at 159.) Mahlerwein also testified that he had never noticed ice or water by the door where Ms. George fell. (Tr. at 170.) Upon the conclusion of closing arguments, the magistrate took the matter under advisement.

{¶ 8} On December 21, 2022, the magistrate issued his decision in this case. The magistrate first found "the exact circumstances of how [Ms. George] fell were not established, there is also no basis upon which to conclude that some defect in the aisleway or step caused plaintiff's fall." (Mag.'s Decision at 3.) The magistrate concluded that Ms. George failed to act with ordinary care when she fell on the step. (Mag.'s Decision at 16.) Concerning whether the open door and Zamboni constituted open and obvious hazards, the magistrate wrote, "[Ms. George] knew the Zamboni was being operated and the door was open as she exited the center" and "had actual and/or constructive knowledge that the rink door was left open while the Zamboni was being operated." (Mag.'s Decision at 4, 14.) However, the magistrate concluded that while Ms. George could have observed that the door was open, "the risk of being struck by the Zamboni was not open and obvious" and "[t]he open rink door simply did not alert plaintiff that she might be almost instantly hit by the Zamboni if she accidentally fell in the aisleway." (Mag.'s Decision at 15.) The magistrate explained:

> Here, while the open rink door certainly served as a warning that one could
> inadvertently end up on the ice, due to a fall or otherwise, the open door

would not alert a reasonable person to the fact that he or she could be run over or struck by a Zamboni. In fact, unless the Zamboni is operating very near the open door at the same time that a person inadvertently falls into its path, as in this case, there is no obvious danger from the Zamboni as one exits the center.

(Mag.'s Decision at 15.)

{¶ 9} The magistrate was also not persuaded that the Zamboni was an open and obvious hazard as "the Zamboni might warn invitees of the danger of the machine itself and to stay off the ice and out of its path but it would not alert an invitee that there is a danger of falling directly into its path through an open rink door if one were to slip and fall while exiting the center." (Mag.'s Decision at 15.) The magistrate noted that by the time Ms. George fell, she did not have an opportunity to avoid the Zamboni and that the open rink could not alert her to the particular danger of falling on the ice and getting hit. (Mag.'s Decision at 15.) The magistrate found that Miami University failed in its duty to keep the door closed and that the Zamboni, as opposed to Ms. George's fall, caused her injuries. (Mag.'s Decision at 15-17.)

{¶ 10} Concerning injuries sustained in the accident, the magistrate examined the medical records and reports and concluded that Ms. George "suffered cuts and abrasions which resolved within a few weeks, a partially torn rotator cuff, an injured biceps tendon, a strained deltoid, and impingement, all in her right shoulder and arm." (Mag.'s Decision at 9.) Ultimately, the magistrate found Miami University negligent and awarded Ms. George $66,928.26 in compensatory damages. However, the magistrate reduced her award by $16,928.26 to account for the collateral benefits. The magistrate then allocated 30 percent fault to Ms. George and 70 percent fault to Miami University, further reducing the total judgment to $35,025.

{¶ 11} Miami University filed several objections as to the magistrate's decision. Relevant to the instant appeal, Miami University argued that the magistrate erred when he concluded that the open door and the Zamboni were not open and obvious conditions such that Miami University would be relieved of its duty to Ms. George. Miami University alleged that as these conditions were open and obvious, there was no duty to warn of the open door and Zamboni when the conditions were visible and readily observable. Miami University also posited that the magistrate erred in its reliance on *Kraft v. Dolgencorp, Inc.*, 7th Dist. No. 06 MA 69, 2007-Ohio-4997.

{¶ 12} On May 10, 2023, the trial court overruled Miami University's objections and affirmed the magistrate's decision in its entirety. Relevant to this appeal, the trial court found that the magistrate properly determined that "while the open rink door certainly served as a warning that one could inadvertently end up on the ice, due to a fall or otherwise, the open door would not alert a reasonable person to the fact that he or she could be run over or struck by a Zamboni." (Internal quotation omitted.) (Jgmt. Entry at 5.) The trial court wrote that "[a]lthough it is undisputed that Plaintiff knew the Zamboni was being operated and that the door was open as she exited the center, the danger of falling through the door and being hit by the Zamboni was not 'so obvious' that it is reasonable to expect Plaintiff to take notice of that risk and take appropriate measures to protect herself." (Jgmt. Entry at 5.) Ultimately, the trial court adopted the magistrate's findings that the "Zamboni operating while the rink door was left open, in part, proximately caused [Ms. George's] injuries or his allocation of fault between the proximate causes." (Jgmt. Entry at 6.)

{¶ 13} Miami University filed a timely appeal.

## II. ASSIGNMENTS OF ERROR

{¶ 14} Miami University assigns the following as trial court error:

> [I.] The Court of Claims erred as a matter of law in holding that Plaintiff-Appellee's claims were not barred by the open and obvious doctrine after it explicitly found that she knew both that the door to the ice rink was open and that the Zamboni was operating as she exited the ice center.

> [II.] The Court of Claims applied the wrong legal standard for the open and obvious doctrine by adding a requirement that Plaintiff-Appellee be able to anticipate the exact mechanism by which she would be injured.

## III. LEGAL ANALYSIS

### A. Miami University's First and Second Assignments of Error

{¶ 15} In its first assignment of error, Miami University argues that the trial court erred, as a matter of law, finding Ms. George's claims were not barred under the open and obvious doctrine. In its second assignment of error, Miami University takes issue with the trial court's purported application of the incorrect legal standard for the open and obvious doctrine. Because Miami University's assignments of error overlap, we will analyze them together.

**1. Standard of Review**

{¶ 16} Appellate review of a trial court's adoption of a magistrate's decision may vary depending on the issues that were preserved for review through objections raised before the trial court and raised on appeal by an assignment of error. *Lenoir v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 19AP-94, 2020-Ohio-387, ¶ 10, citing *Feathers v. Ohio Dept. Rehab. & Corr.*, 10th Dist. No. 16AP-588, 2017-Ohio-8179, ¶ 10. This district, however, has inadvertently generalized our review of a trial court's decision to adopt, reject, or modify a magistrate's decision as an abuse of discretion. *See, e.g., Ball v. Octopus Constr., L.L.C.*, 10th Dist. No. 22AP-780, 2023-Ohio-2596, ¶ 11, citing *Lenoir* at ¶ 10, citing *Tedla v. Al-Shamrookh*, 10th Dist. No. 15AP-1094, 2017-Ohio-1021, ¶ 11, citing *Bell v. Nichols*, 10th Dist. No. 10AP-1036, 2013-Ohio-2559, ¶ 16. To be sure, appellate review of a trial court's decision is unrelated to the standard applied to a trial court's review of a magistrate's decision. Going forward, we clarify the precedent out of our district to the extent that we have asserted the default standard of review for a trial court's adoption of a magistrate's decision as an abuse of discretion. Instead, our review will be dictated based on what was (1) preserved for review through objections raised before the trial court, and (2) raised on appeal by an assignment of error.

{¶ 17} Our determination of whether a hazard is open and obvious is one of law for the court or one of fact for the jury will depend on the particular facts of the case. *Johnson v. Am. Italian Golf Assn. of Columbus*, 10th Dist. No. 17AP-128, 2018-Ohio-2100, ¶ 16, citing *Freiburger v. Four Seasons Golf Ctr., L.L.C.*, 10th Dist. No. 06AP-765, 2007-Ohio-2871, ¶ 11, citing *Boles v. Montgomery Ward & Co.*, 153 Ohio St. 381, 384 (1950). Regardless of the nature of the inquiry, however, the "existence and obviousness of an alleged danger requires a review of the underlying facts." *Freiburger* at ¶ 11, citing *Schmitt v. Duke Realty, L.P.*, 10th Dist. No. 04AP-251, 2005-Ohio-4245, ¶ 10; *Terakedis v. Lin Family Ltd. Partnership*, 10th Dist. No. 04AP-1172, 2005-Ohio-3985, ¶ 10. We have held that when there is no genuine issue of material fact as to whether the hazard was free from obstruction and readily appreciable by an ordinary person, the hazard is open and obvious as a matter of law. *Freiburger* at ¶ 11. We review questions of law de novo on appeal. *Lenoir* at ¶ 10.

{¶ 18} However, in cases where reasonable minds may differ as to whether the danger is free from obstruction and readily appreciable by a reasonable person, the trier of fact must resolve the factual issue before the trial court considers whether the landlord had

a duty of care to the business invitee. *Id.*, citing *Schmitt* at ¶ 17-19. When the trial court conducts a bench trial, it is the duty of the court to resolve conflicts of fact and determine the credibility and weight that should be afforded to the testimony of the witnesses. *Badawi v. Ohio State Univ. Wexner Med. Ctr.*, 10th Dist. No. 23AP-444, 2024-Ohio-2503, ¶ 18, citing *Kuper v. Halbach*, 10th Dist. No. 09AP-899, 2010-Ohio-3020, ¶ 45. Appellate courts give deference to the trial court's findings of fact as " 'the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *Stanley v. Ohio State Univ. Med. Ctr.*, 10th Dist. No. 12AP-999, 2013-Ohio-5140, ¶ 18, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). A reviewing court should not substitute its judgment for that of the trial court when competent, credible evidence supports the findings of fact rendered by the trial court. *Badawi* at ¶ 18, citing *Seasons Coal Co., Inc.* at 80. "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *Seasons Coal Co., Inc.* at 80; *see also Metal Interests, Ltd. v. Interesting Invest., L.L.C.*, 1st Dist. No. C-180518, 2019-Ohio-3942, ¶ 17 ("[w]hen reviewing an appeal from a civil bench trial, we apply a manifest-weight standard of review").

### 2. Negligence and the Open and Obvious Doctrine

{¶ 19} To recover on a claim of negligence, Ms. George must show by a preponderance of the evidence that (1) Miami University owed her a duty, (2) Miami University breached that duty, and (3) the breach proximately caused her injury. *Jenkins v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 12AP-787, 2013-Ohio-5106, ¶ 6, citing *Wallace v. Ohio Dept. of Commerce*, 96 Ohio St.3d 266, 2002-Ohio-4210, ¶ 22. The crux of Miami University's argument falls under the first prong of the analysis.

{¶ 20} Ohio law dictates that in a premises liability contest, the duty owed by an owner or occupier of a premises will depend on their relationship to the injured party. *Waldron v. Edinger*, 10th Dist. No. 22AP-195, 2022-Ohio-4296, ¶ 12, citing *Simms v. Penn Natl. Gaming, Inc.*, 10th Dist. No. 21AP-185, 2022-Ohio-388, ¶ 19, citing *Byrd v. Arbors E. Subacute & Rehab. Ctr.*, 10th Dist. No. 14AP-232, 2014-Ohio-3935, ¶ 8, citing *Gladon v. Greater Cleveland Regional Transit Auth.*, 75 Ohio St.3d 312, 315 (1996). Ohio follows the common-law classifications of invitee, licensee, or trespasser. *Waldron* at ¶ 12, citing

*Carpenter v. Mt. Vernon Gateway, Ltd.*, 5th Dist. No. 13CA6, 2014-Ohio-465, ¶ 19, citing *Shump v. First Continental-Robinwood Assocs.*, 71 Ohio St.3d 414, 417 (1994).

{¶ 21} There is no dispute among the parties that Ms. George was a business invitee when she attended her son's hockey game on March 11, 2018. Business invitees are defined as " 'those persons who come upon the premises of another, by invitation, express or implied, for some purpose which is beneficial to the owner.' " *Bowen v. Columbus Airport L.P.*, 10th Dist. No. 07AP-108, 2008-Ohio-763, ¶ 9, quoting *Baldauf v. Kent State Univ.*, 49 Ohio App.3d 46, 47 (10th Dist.1988). This court has held that an owner " 'owes business invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition so that its customers are not unnecessarily and unreasonably exposed to danger.' " S*cott v. Harrisburg Petro., L.L.C.*, 10th Dist. No. 19AP-413, 2020-Ohio-3431, ¶ 7, quoting *Liggins v. Giant Eagle McCutcheon & Stelzer*, 10th Dist. No. 17AP-383, 2019-Ohio-1250, ¶ 13, citing *Paschal v. Rite Aid Pharmacy, Inc.*, 18 Ohio St.3d 203 (1985). This duty of care owed by a business owner includes reasonably safe ingress and egress for the invitee. *Bowen* at ¶ 9, citing *Albright v. Univ. of Toledo*, 10th Dist. No. 01AP-130, 2001 Ohio App. LEXIS 4158 (Sept. 18, 2001), citing *Tyrrell v. Invest. Assoc., Inc.*, 16 Ohio App.3d 47 (8th Dist.1984). A business owner, however, is not an insurer of an invitee's safety. *Bowen* at ¶ 9, citing *Paschal* at 203. The mere occurrence of an injury to a business invitee does not give rise to a presumption of negligence. *Price v. United Dairy Farmers, Inc.*, 10th Dist. No. 04AP-83, 2004-Ohio-3392, ¶ 6.

{¶ 22} The open and obvious doctrine operates as an exception to an owner's duty of care acting as a total bar to a negligence claim. *Scott* at ¶ 7. " '[O]pen-and-obvious dangers are those not hidden, concealed from view, or undiscoverable upon ordinary inspection.' " *Martin v. Giant Eagle, Inc.*, 10th Dist. No. 13AP-809, 2014-Ohio-2657, ¶ 21, quoting *Thompson v. Ohio State Univ. Physicians, Inc.*, 10th Dist. No. 10AP-612, 2011-Ohio-2270, ¶ 12. When the danger is open and obvious, "a landowner owes no duty of care to individuals lawfully on the premises." *Armstrong v. Best Buy Co.*, 99 Ohio St.3d 79, 2003-Ohio-2573, ¶ 14, citing *Sidle v. Humphrey*, 13 Ohio St.2d 45 (1968). The Supreme Court of Ohio has explained the rationale underlying the doctrine writing, "the open and obvious nature of the hazard itself serves as a warning. Thus, the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves." *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 644, (1992).

{¶ 23} This court has found that the existence and obviousness of the danger requires a review of the underlying facts in the case. *Johnson* at ¶ 16, citing *Freiburger* at ¶ 11. To determine whether the open and obvious doctrine applies, a court looks at " 'the nature of the dangerous condition itself, as opposed to the nature of the plaintiff's conduct in encountering it.' " *Rawlings v. Springwood Apts. of Columbus, Ltd.*, 10th Dist. No. 18AP-359, 2018-Ohio-4845, ¶ 24, quoting *Armstrong* at ¶ 13. The factual analysis involved when resolving whether a danger is open and obvious is whether the danger was free from obstruction and readily appreciable by an ordinary person. *Johnson* at ¶ 16. Indeed, a business invitee does not need to observe the dangerous condition for it to be open and obvious. " '[R]ather, the determinative issue is whether the condition is *observable* or if [the] plaintiff could have seen the condition if he or she had looked.' " (Emphasis added.) (Internal quotation omitted.) *Scott* at ¶ 7, quoting *Smith-Huff v. Wal-Mart Stores, Inc.*, 10th Dist. No. 15AP-454, 2015-Ohio-5238, ¶ 11, citing *Thompson* at ¶ 12.

### 3. *Kraft v. Dolgencorp, Inc.*, 7th Dist. No. 06 MA 69, 2007-Ohio-4997

{¶ 24} Miami University contends that the trial court erred in its examination of the open and obvious doctrine by relying on *Kraft* as it set out an incorrect legal standard. Miami University also alleges that the trial court created an additional requirement that Miami University anticipate the exact mechanism by which Ms. George would be injured. A brief review of the facts and analysis of *Kraft* is instructive.

{¶ 25} In *Kraft*, the plaintiff "slipped and fell in a puddle of water located in the Dollar General store on South Avenue in Youngstown, Ohio," giving rise to a negligence suit and an inquiry into the open and obvious doctrine. *Id.* at ¶ 1. At the conclusion of discovery, Dollar General filed a motion for summary judgment arguing that the puddle was open and obvious based on testimony that the store manager had placed a warning sign in the aisle that the plaintiff fell. *Id.* at ¶ 2. Conversely, the plaintiff argued that there was a reasonable dispute of fact that the hazard was open and obvious as the water was clear and located in the middle of the store. *Id.* at ¶ 3. While the trial court granted summary judgment in favor of Dollar General, the Seventh District Court of Appeals reversed finding that there was a dispute of fact as to whether the hazard was open and obvious.

{¶ 26} In its examination of the open and obvious doctrine, the Seventh District Court of Appeals relied on the Supreme Court's decision in *Armstrong* and concluded there was a dispute of fact as to whether the water was open and obvious as it appeared the plaintiff had slipped and fell when she turned into the aisle that had the water on the floor.

*Kraft* at ¶ 38. The *Kraft* court reasoned that because the plaintiff only encountered the water upon turning into the aisle, she did not see the sign and had little opportunity to perceive the hazard. *Id.* The *Kraft* court wrote, "the presence of water on a business floor tends to be an open and obvious condition when the facts involve some expectation on the part of the invitee that water might be encountered." *Id.* at ¶ 35.

{¶ 27} In the case sub judice, the trial court adopted the following statement from the magistrate's decision: "the open and obvious doctrine requires that the business invitee have some expectation of encountering the danger or have had a sufficient amount of time to perceive the danger before it was encountered in order to be able to take corrective action and avoid it." (Mag.'s Decision at 11.) Upon review, the trial court did not err in its reliance on *Kraft* to set out the appropriate legal standard. *Kraft* aligns with established case law that the hazard must be observable. In *Kraft*, there was a dispute of fact about whether the water at issue was obstructed from the plaintiff's view as she turned down the aisle. This court has found on multiple occasions that when water is observable, the hazard is deemed open and obvious. *See, e.g., Nicols v. Staybridge Suites*, 10th Dist. No. 08AP-773, 2009-Ohio-1381, ¶ 27 (affirming the trial court's grant of summary judgment as the plaintiff knew the pool deck was wet, observed two children slip and fall in the same area where she sustained injuries, and was warned that the tiled area around the pool was "slick"); *Caravella v. West-WHI Columbus Northwest Partners*, 10th Dist. No. 05AP-499, 2005-Ohio-6762 (affirming the trial court's determination that the water was an open and obvious hazard as the plaintiff acknowledged she knew the breezeway was noticeably wet). In these cases, the plaintiff either had some expectation of encountering the slippery conditions or sufficient time to observe the danger of the water before encountering the wet area.

{¶ 28} Miami University also contends that the trial court's application of *Kraft* created an enhanced legal standard of anticipating the exact mechanism by which Ms. George was injured. Miami University cites our decision in *Lydic v. Lowe's Co.*, 10th Dist. No. 01AP-1432, 2002-Ohio-5001 for the proposition that a hazard is open and obvious even when the plaintiff admitted that they did not see the hazard but would have seen it if they had looked. Miami University's arguments are without merit. *Kraft* does not stand for the proposition that the plaintiff must *actually* perceive the hazard prior to the injury or that the trial court required Miami University to anticipate the exact mechanism by which Ms. George would be injured. This is most evident in the *Kraft* court's examination

and reliance on the Supreme Court's decision in *Armstrong*. In *Armstrong*, the plaintiff suffered injuries after tripping over the bracket of a shopping cart guardrail. *Armstrong* at ¶ 1. The Supreme Court concluded that the guardrail was an open and obvious hazard as it was visible to all persons entering and exiting the store. *Armstrong* at ¶ 16. The plaintiff acknowledged that nothing obstructed his view and "had he been looking down, he would have seen the guardrail." *Id.* The *Kraft* court expressly relied on the standard outlined in *Armstrong* but distinguished it on factual grounds as there was a dispute of fact whether the *Kraft* plaintiff had the opportunity to observe the water as she turned into the aisle. To be sure, our decision in *Lydic* is quite similar to *Armstrong*. In *Lydic*, we found a piece of wood that caused the injured party to fall on a retailer's property was an open and obvious hazard. We explained that if the injured party had not been carrying a large bag in front of him that obstructed his view, he would have observed the pieces of wood on the floor. *Id.* at ¶ 14. Because we find that the trial court set out the correct legal standard for reviewing whether a hazard is open and obvious, we overrule Miami University's first assignment of error.

### 4. Open and Obvious Analysis

{¶ 29} In the interest of clarity, we will review the three primary factors that were involved in this incident: (1) the step, (2) the open door, and (3) the Zamboni.

### a. The Step

{¶ 30} First, we must address what role the large step played in the accident. There is no dispute that the staircase at issue included an abnormally long final step, measuring at approximately 18 inches. (Tr. at 43, 67, 121.) Elliott testified that a sign labeled with yellow and black caution tape which read, "WATCH YOUR STEP," had been posted by the large stair since "after the building was constructed." (Tr. at 96-97, 101, 125.) According to Ms. George, she slipped as she descended the stairs. (Tr. at 67.) While Ms. George thought that she could have slipped on water or ice left by one of the hockey players, she did not recall seeing water in the area at any point, and she acknowledged that she could have just as easily fallen because she lost her balance or one of her legs buckled. (Tr. at 68.) After the accident, Ackley inspected the area "to see if there were any problems that could have precipitated [the] fall" and concluded that there was nothing "out of the ordinary, * * * no wet areas, nothing of that nature." (Tr. at 137, 140.)

{¶ 31} Ultimately, the magistrate concluded "the exact circumstances of how [Ms. George] fell were not established, [and] there is also no basis upon which to conclude

that some defect in the aisleway or step caused plaintiff's fall." (Mag.'s Decision at 3.) The trial court adopted the above finding and found Ms. George failed to act with ordinary care when she fell on the step. (Mag.'s Decision at 16-17.) Counsel for Ms. George conceded as much during closing statements stating, "it doesn't matter how she fell, whether it's on water, whether it was a missed step, it doesn't matter." (Tr. at 176-77, 179.) As such, the issue becomes whether the open door and Zamboni are open and obvious hazards that relieve Miami University of its duty of care.

### b. The Open Door

{¶ 32} At trial, Ms. George did not recall if she saw that the door was open on the day of the accident but acknowledged that she has seen the door left open on several occasions. While the trial court concluded Ms. George "had actual and/or constructive knowledge that the rink door was left open while the Zamboni was being operated," it found that it did not constitute an open and obvious hazard. (Mag.'s Decision at 14.)

{¶ 33} The video evidence reveals that prior to Ms. George's fall, the door was observably open. It is apparent from the facts of this case that the nature of the open door leads to the obvious risk of someone falling onto the ice. *See Prest v. Delta Delta Delta Sorority*, 115 Ohio App.3d 712 (10th Dist.1996) (finding the edge of a roof was an open and obvious hazard); *Anderson v. Ruoff*, 100 Ohio App.3d 601 (10th Dist.1995) (finding neither the lessee nor the property owner owed a duty of care to the decedent when he stumbled and fell from a hayloft as it was an open and obvious hazard). Much like the roof in *Prest* and the hayloft in *Anderson*, the open door was a visible, observable, noticeable, and discernable condition that was not hidden, concealed, or obscured. While we find that the open door was an open and obvious hazard, that does not end our inquiry. Unlike *Anderson* and *Prest*, we must also consider the role of another hazard, the Zamboni.

{¶ 34} We are guided by our prior analysis in *Freiburger,* 2007-Ohio-2871, as it too required a multi-factor analysis under the open and obvious doctrine. In *Freiburger*, the plaintiff was hitting golf balls from a 14-foot-high ledge at a practice facility. When the plaintiff's friend approached, the plaintiff stepped back catching his foot on the edge of the tee mat. *Id*. at ¶ 3. The *Freiburger* plaintiff then fell off the ledge. While a safety net was installed, the net did not catch the plaintiff resulting in severe injuries. *Id*. at ¶ 2-3. Upon the filing of a complaint, the defendants filed a motion for summary judgment contending the second-tier ledge was an open and obvious condition, which relieved them of any duty to the plaintiff. *Id*. at ¶ 5. The trial court, relying on our decision in *Anderson*, granted

summary judgment finding the ledge was open and obvious condition noting that the "plaintiff observed the ledge before he fell and acknowledged the possibility he could fall off it." *Id.* at ¶ 6.

{¶ 35} On appeal, the parties agreed that the ledge and net were visible, and the question was whether the safety net was an obvious hazard. This court considered whether a reasonable person could readily "appreciate the risk that the safety net would not catch them if they fell off the golf center's second-story ledge." *Freiburger* at ¶ 18. This court concluded there was a dispute of fact whether the safety net was an open and obvious hazard. The "Plaintiff testified he saw the netting and realized it was there to protect people from falling off the second-story ledge. A partner to Four Seasons admitted that from observing [the netting], [he] knew that it was there to provide safety in an emergency where someone might fall off the deck." (Quotation and citation omitted.) *Id.* at ¶ 21. However, "given that plaintiff is six feet five inches tall and 200 pounds, and the safety net is only 40 inches wide, [we] cannot conclude that the danger of falling outside the net as plaintiff did was not open and obvious as a matter of law. Rather, the matter of plaintiff's ability to appreciate the danger the safety net posed is one for the trier of fact to resolve." *Id.* at ¶ 22.

{¶ 36} In *Freiburger*, three factors played a role in the accident: (1) the mat, (2) the ledge, and (3) the safety net. Here, we also have three factors to consider: (1) the 18-inch step, (2) the open door, and (3) the Zamboni. Like the mat in *Freiburger*, we are not concerned with the step as the trial court found Ms. George did not demonstrate that some defect in the aisleway or step caused the plaintiff's fall. Similar to the ledge in *Freiburger*, we have also concluded that the open door amounted to an obvious hazard alerting a reasonable observer to the dangers of falling onto the ice. Much as the plaintiff in *Freiburger* observed the ledge and acknowledged the possibility that he could fall off it, Ms. George testified that she had seen the door open on multiple occasions. Moreover, like the safety net in *Freiburger*, Ms. George acknowledged that the Zamboni was visible as she descended the stairs. (Tr. at 70.) Accordingly, the question becomes whether a reasonable person could appreciate the risk that the Zamboni would hit them if they fell onto the ice.

**c. The Zamboni**

{¶ 37} One key distinction between *Freiburger* and the instant case, however, is that the Zamboni was moving at the time of the accident. Generally, Ohio courts have found " '[p]remises tort claims where the alleged negligence arises from static or passive conditions, such as preexisting latent defects, are legally distinct from claims arising from

active negligence by act or omission.' " *Wulf v. Bravo Brio Restaurant Group, Inc.*, 12th Dist. No. CA2018-12-238, 2019-Ohio-3434, ¶ 23, quoting *Holcomb v. Holcomb*, 12th Dist. No. CA2013-10-080, 2014-Ohio-3081, ¶ 21, citing *Simmons v. Am. Pacific Ent., L.L.C.*, 164 Ohio App.3d 763, 2005-Ohio-6957, ¶ 23 (10th Dist.) There is an important legal distinction between static and dynamic forms of negligence because they correspond to two separate and distinct duties a premises occupier owes a business invitee. *Wulf* at ¶ 23, citing *Lumley v. Marc Glassman, Inc.*, 11th Dist. No. 2007-P-0082, 2009-Ohio-540, ¶ 26. This court has explained: "(1) static conditions relate to the owner's duty to maintain its premises in a reasonably safe condition, including an obligation to warn its invitees of latent or hidden dangers, while (2) active negligence relates to the owner's duty not to injure its invitees by negligent activities conducted on the premises." *Simmons* at ¶ 20. At least one other district has adopted this same analysis. *See Dunn v. Heineman's Winery*, 6th Dist. No. OT-14-044, 2015-Ohio-4054, ¶ 7; *Black v. Discount Drug Mart, Inc.*, 6th Dist. No. E-06-044, 2007-Ohio-2027.

{¶ 38} The Supreme Court has identified one instance where the open and obvious doctrine has applied to moving trains. *See McKinney v. Hartz & Restle Realtors, Inc.*, 31 Ohio St.3d 244 (1987). In *McKinney*, a four-year-old child, that lived in an apartment complex by train tracks, was injured by a moving train while he was trying to board. The Supreme Court found the railroad had no duty to fence the property and the moving train was considered an open and obvious hazard. *Id.* at 248. " 'Nothing could be more pregnant with warning of danger than the noise and appearance of a huge, rumbling, string of railroad cars. It cannot be compared with the silent, deadly danger of high-power electricity, [or] the inanimate attraction of stationary machines.' " *Id.*, quoting *Herrera v. S. Pacific Ry. Co.*, 188 Cal.App.2d 441, 449, 10 Cal.Rptr. 575, 580 (1961). At least one appellate district has reached a similar conclusion. *See, e.g., Jones v. Norfolk S. Ry. Co.*, 8th Dist. No. 84394, 2005-Ohio-879.

{¶ 39} This district has found that moving objects traditionally do not fall under the open and obvious doctrine. In *Wolfe v. Bison Baseball, Inc.*, 10th Dist. No. 09AP-905, 2010-Ohio-1390, the plaintiff, while standing in foul territory was struck by a baseball thrown by a player during infield practice. *Id.* at ¶ 1. "Apparently, the ball got away from the third baseman as he was making a routine throw to first." *Id.* Wolfe brought a negligence claim against both the Cleveland Indians Baseball Company and its minor league affiliate. *Id.* In relevant part, this court found the trial court's grant of summary

judgment was proper as the plaintiff assumed the risk of injury when she was on the field of play, but it rejected the argument that the baseball was an open and obvious hazard as it was "not a 'static condition'--its precise location or potential to cause harm cannot be observed prior to its point of impact." *Id.* at ¶ 14. *See also Simmons,* 2005-Ohio-6957 (finding the open and obvious doctrine inapplicable as there was a genuine issue of dispute whether the invitee was injured by the active negligence of another employee moving a dock plate); *Wulf* at ¶ 23 (finding the open and obvious doctrine did not apply when a waitress backed into the plaintiff while carrying a food tray).

{¶ 40} Interesting, Ohio courts have applied the open and obvious doctrine, depending on the facts, in cases involving falling merchandise. However, "there appears to be no general consensus among Ohio courts on the question of whether falling merchandise is an open and obvious danger." *Weber v. Menard, Inc.,* S.D.Ohio No. 3:13-cv-229, 2014 U.S. Dist. LEXIS 141457, *10 (Oct. 3, 2014). The United States Southern District of Ohio in *Morrow v. Wal-Mart Stores E., LP,* S.D.Ohio No. 1:20-cv-162, 2021 U.S. Dist. LEXIS 56633, *9 (Mar. 25, 2021) collected Ohio cases that analyzed whether falling merchandise fell under the open and obvious doctrine writing:

> Generally, it is "more likely" that a danger will be considered "open and obvious" if the individual was moving items around or rummaging through a display. *Weber,* 2014 U.S. Dist. LEXIS 141457, 2014 WL 4965940 at *5 ("If [the plaintiff] was, in fact, rummaging around in the horizontal vent cap bin when the part fell, it is more likely that the danger will be deemed open and obvious. But if he did not touch anything in that particular bin, this becomes a much closer question. Even if the parts were precariously stacked, one would not necessarily expect one of them to fall unless someone did something to dislodge it."). *See also McGee v. Lowe's Home Improvement,* 2007-Ohio-4981, 2007 WL 2758668, at *4 (Ohio Ct. App. 2007) (the court of appeals affirmed the trial court's determination that the plaintiff's negligence claim was barred by the open and obvious doctrine because the plaintiff was "looking through the display" by "pushing the different flooring from side to side." The court found significant that "there always remains a possibility that too much fumbling around through merchandise can create an unstable situation where items may become loose or shift positions. That is precisely what appears to have happened in this case.").
>
> Conversely, "[w]here reasonable minds could differ with respect to whether a danger is open and obvious, the obviousness of the risk is an issue for the jury to determine." *Klauss v. Marc Glassman, Inc.,* 2005-Ohio-1306, 2005 WL 678984, at *3 (Ohio Ct. App. 2005). *See Dillon-Garcia v. Marc Glassman, Inc.,* 2006-Ohio-562, 2006 WL 302349 (Ohio Ct. App. 006) ("in viewing the evidence in a light most favorable to appellant, we cannot say that the danger of a stray can falling was open and obvious as a matter of law. We

find that there is a question of fact for a jury to decide whether one could anticipate a stray can falling, on its own, from another part of the stack when appellant had successfully removed a can without affecting any of the cans in contact with it."); *Rengel v. Meijer Stores Ltd. P'ship*, No. E-12-050, 2013 Ohio 1088, 2013 WL 1190867, at *4 (Ohio Ct. App. Mar. 22, 2013) (holding that there was a question of fact as to whether a store's display of cantaloupes created an open and obvious hazard); *Lopez v. Home Depot, USA, Inc.*, 2003-Ohio-2132, 2003 WL 1962360, at *2 (Ohio Ct. App. 2003) (emphasis added) ("the potential hazard of having lumber fall from an upper shelf while someone is searching for wood in a lower shelf is not an open and obvious danger against which [the plaintiff] should have protected herself.").

(Emphasis omitted.) *Morrow* at *23-24.

{¶ 41} At least one Ohio court has applied this same logic to hazards outside the setting of falling merchandise. *Korengal v. Little Miami Golf Ctr.*, 1st Dist. No. C-180416, 2019-Ohio-3681 (finding there was a dispute of fact whether a tree limb that fell on a 12-year-old boy while he was golfing during a windstorm was an open and obvious hazard).

{¶ 42} Here, the open and obvious doctrine is not applicable as, unlike cases that involve static conditions, the Zamboni was a moving object. Like the baseball in *Wolfe*, Ms. George could not reasonably appreciate its precise location or potential to cause harm prior to its impact. *Wolfe* at ¶ 14. While Ms. George could see the Zamboni as she descended the stairs, our review of the video shows the Zamboni cutting across the ice immediately before she fell down the steps. Thus, even if the Zamboni was visible, Ms. George could not appreciate its precise location or its potential to cause her harm prior to the incident. As such, the injuries suffered from the Zamboni arise from the active negligence of Miami University not a latent defect on the property. Unlike the train in *McKinney* that only travels in one direction, a moving Zamboni is not tethered to a track. A Zamboni moves about the rink, under the direction of the driver, in any number of ways. Furthermore, a train's tracks can serve as an inherent warning to a pedestrian that they are walking in the train's lane of travel whereas an ice rink does not necessarily provide the same type of notice. As an individual may cut their lawn in a unique pattern, so too could a Zamboni driver approach the resurfacing of an ice rink. As such, we find the line of cases concerning trains distinct.

{¶ 43} Alternatively, even if we were to consider whether the Zamboni was an open and obvious hazard, we find reasonable minds could differ as to whether the danger was free from obstruction and readily appreciable by a reasonable person. As such, the trier of fact, in this case the trial court, was tasked with resolving this factual issue. Upon review,

we find that the trial court's determination that a reasonable person could not appreciate the risk of being hit by a Zamboni was supported by competent, credible evidence. At bottom, Miami University owed Ms. George a duty of ordinary care by maintaining the Center in a reasonable safe condition free from unnecessary and unreasonable exposure to dangers. *See Scott* at ¶ 7, citing *Liggins* at ¶ 13. At the time that Ms. George was leaving the stands and descending the stairs, it is reasonable to find that an ordinary person would not be able to appreciate the possibility of tripping, falling through the open door, and getting struck by a Zamboni. *Rice v. Kroger-K016 Great Lakes KMA*, 6th Dist. No. L-19-1175, 2020-Ohio-2654, ¶ 9 ("open and obvious exception requires that the business invitee must have some expectation of encountering the danger * * * before it was encountered in order to be able to take corrective action and avoid it"); *Kraft* at ¶ 35 ("the presence of [the hazard] * * * tends to be an open and obvious condition when the facts involve some expectation on the part of the invitee that [the hazard] might be encountered"). While there is no dispute that the Zamboni was visible, Ohio courts have found that merely because the hazard is visible does not mean the nature of the danger is necessarily discernable. *See, e.g., McClain v. The Drinkery*, 1st Dist. No. C-210124, 2021-Ohio-4161 (finding that while the pool table slabs that caused the plaintiff's injuries were visible, reasonable minds could differ as to whether the nature of the danger they posed was apparent). Given the unique facts of this case, we find that reasonable minds could differ as to whether the Zamboni was an open and obvious hazard as it is unclear whether an ordinary person could reasonably appreciate the danger of being struck by a Zamboni. Because we find there was some competent, credible evidence to support the conclusion that the Zamboni was not an open and obvious hazard, we cannot say that the trial court erred on this point.

{¶ 44} Miami University argues "there were a number of ways a reasonable person could have avoided being struck by the Zamboni, before they encountered it." (Emphasis omitted.) (Appellant's Brief at 21.) This argument misses the point. As the Supreme Court noted in *Armstrong*, the inquiry looks at the nature of the dangerous condition "as opposed to the nature of the plaintiff's conduct in encountering it. The fact that a plaintiff was unreasonable in choosing to encounter the danger is not what relieves the property owner of liability." *Armstrong* at ¶ 13. The focus is not whether Ms. George should have gone down the steps past the open door and Zamboni being operated, but whether a reasonable person under those facts would have "perceive[d] the danger under the circumstances." *Rice* at ¶ 9. Given the unique confluence of events, we find that the trial court's adoption of

the magistrate's determination that a reasonable observer could not discern the danger of the Zamboni was supported by competent, credible evidence.

## IV. CONCLUSION

{¶ 45} In summary, we find that the trial court erred as a matter of law by concluding that the open door was not an open and obvious hazard. However, we also find that the trial court did not err by finding that the Zamboni was not an open and obvious hazard and was the cause of Ms. George's injuries. Because we find that the trial court erred as to one of the two identified causes of Ms. George's injuries, it is unclear how our decision would impact the allocation of fault and Ms. George's damages. Therefore, we remand this matter for further consideration to determine what, *if any*, impact our decision has on the comparative negligence calculation.

{¶ 46} For the foregoing reasons, Miami University's first assignment of error is overruled in part and sustained in part, its second assignment of error is overruled, and the judgment of the Court of Claims of Ohio is affirmed in part and reversed in part. This matter is remanded back to the Court of Claims of Ohio with instructions.

*Judgment affirmed in part and reversed in part*;
*cause remanded with instructions.*

BEATTY BLUNT and LELAND, JJ., concur.

————————————